IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1914, AND MAY
TERM, 1915, IN THE NINETY-NINTH YEAR
OF THE STATE.

---

### BAKER *v.* STATE OF INDIANA.

[No. 22,582. Filed March 3, 1915.]

1. CONTEMPT.—*Proceedings.—Motion to Quash Return.*—In review-
ing the action of the trial court in sustaining a motion to quash
the return filed by defendant in a contempt proceeding, the court
on appeal will take as true all the facts well pleaded in such
return, and will disregard all facts in the motion which attempt
to deny, or to confess and avoid, the facts stated in the return.
p. 3.

2. GRAND JURY.—*Examination of Witness.—Contempt.*—A witness
called before a grand jury must answer all proper questions pro-
pounded, and can not purge himself of contempt in refusing to
answer by objecting that the inquisitorial power of the grand
jury is being abused. pp. 4, 6.

3. GRAND JURY.—*Powers and Duties.*—Grand jurors, under the
oath administered to them, are required to diligently inquire and
fix the responsibility for all felonies and misdemeanors com-
mitted or triable within the county, if the same can be done by
legal evidence, and make presentment to the proper court, and
it is its business to call witnesses to be examined for the purpose
of fixing such responsibility, regardless of whether the scope of
investigation may involve many persons or few; hence, where
a grand jury has information which naturally leads to the belief
that some of the taxpayers of the county have committed per-
jury in making false tax returns as to the amount of money on
hand, it may examine a bank cashier concerning the deposit of
any taxpayer. p. 4.

4. GRAND JURY.—*Discharge.*—The court has power to discharge
a grand jury which it would be justified in exercising in case
time is being wasted in idle or fruitless investigation, but such
power is to be exercised with caution and only in proper cases.
p. 5.

5. GRAND JURY.—*Rights of Witness.*—*Contempt.*—The fact that a
bank cashier called as a witness before the grand jury could not
answer questions without consulting the books of his business,
afforded no justification for his refusal to answer questions, on
the ground that the requirement to do so amounted to a demand
of his particular services in violation of Art. 1, §21 of the Con-
stitution, since, where the source of information is exclusively or
peculiarly within the control of the witness, he may be required
to avail himself thereof and to communicate it under proper
interrogation. p. 6.

From Hamilton Circuit Court; *Meade Vestal,* Judge.

Proceedings against Earl S. Baker for contempt of court.
From a judgment that he was in contempt, and imposing a
fine, the defendant appeals. *Affirmed.*

*Shirts & Fertig,* for appellant.

*Thomas M. Honan,* Attorney-General, and *Thomas H.
Branaman,* for the State.

LAIRY, J.—Appellant at the time of the proceedings of
the trial court in this case was cashier of the Citizens State
Bank of Noblesville. Upon being summoned before the
grand jury, he was asked the following questions and made
the following answers thereto. "Q. How much does your
deposit ledger show that Horace G. Brown has on the first
day of March, 1913? A. I cannot tell without referring
to the books. Q. Then you refuse to answer the question
do you? A. Yes, sir. Q. What are the grounds of your
refusal? A. I do not believe you have a right to ask that."
These questions and answers were certified to the court of
Hamilton County and the court made the order following.
"Objection overruled and witness ordered to refer to the
books and answer, but is not required to produce books be-
fore grand jury." Appellant persisted in his refusal to
answer the question and the court then entered an order

requiring him to show cause why he should not be punished as for contempt. A verified answer or return was filed by appellant to which the State addressed a motion to quash. This motion was sustained and the court found appellant guilty of contempt of court and imposed a fine.

Appellant assigns several errors upon which he relies for reversal; but, as every question thus raised is presented by the ruling of the court in sustaining the motion to quash the return to the rule to show cause, we need only consider the questions thus presented. In passing upon this

1. motion, all of the facts well pleaded in the return must be taken as true, and all facts stated in the motion to quash which attempt to deny the facts stated in the return, or which attempt to confess and avoid them must be disregarded.

It will be observed that the witness was not ordered to produce the books of the bank showing the accounts of all its depositors in obedience to the subpoena *duces tecum,* and appellant was not called upon to show cause why he should not be punished for a failure to comply with such an order. For this reason we are not required in this case to determine whether such an order would constitute an unreasonable search and seizure of the private papers and effects of the bank within the meaning of §11, Art. 1 of our State Constitution securing the people of the State against such unreasonable searches and seizures.

The refusal to answer the question propounded was placed upon the ground that the grand jury had no right to ask such a question. Appellant attempts to justify his position in this respect by his verified return to the rule, in which he states the facts upon which he bases his refusal to answer the particular question propounded. This return shows that no charge had been preferred against Horace G. Brown to the effect that he had money on deposit which he had failed to list for taxation, and that neither the prosecuting attorney nor the grand jury had any reason to believe that

Horace G. Brown was guilty of perjury in making a false oath to his return of property or money for taxation. Such return further shows that the only information which the prosecuting attorney or the grand jury possessed on the subject was that the official reports of the various banks and trust companies of the county made next before March 1, 1913, showed that the total deposits in such banks and trust companies exceeded the total amount of money listed for taxation by $1,500,000, and that the grand jury did not know the persons or the corporations that had on deposit the sums of money which made up such difference. It is further averred in such return that the grand jury was engaged in a wholesale investigation of the subject and had summoned the cashiers of all the banks and trust companies in the county to appear before it and make general disclosures as to the names of the depositors and the amount of deposits in such banks and trust companies on March 1, 1913. It is averred that the name of Horace G. Brown was selected at random from the tax duplicate of the county and that the question as to his deposit was asked without any information or probable cause for so doing and with the purpose of continuing such investigation indefinitely by interrogatories as to the deposits of other persons whose names were to be selected in like manner.

Appellant asserts that these facts as disclosed by the return show that the inquisitorial power of the grand jury was being abused and that he was justified for that reason in refusing to answer the question. The court is of a different opinion. The oath administered to the grand jurors requires that they shall diligently inquire and true presentment make of all felonies and misdemeanors, committed or triable within the county, of which they shall have or can obtain legal evidence. It is not the practice before the grand jury to prefer specific charges against particular individuals and to call witnesses only as to such charges. In this State the inquisitorial pow-

er of the grand jury is not so limited. It is the business of this body to inquire diligently as to what felonies or misdemeanors have been committed in the county and to fix the responsibility for such offenses, if this can be done by legal evidence, to the end that a specific charge may be made in the form of an indictment to be returned into the proper court. If it is known that a criminal offense has been committed, witnesses may be called and examined for the purpose of fixing the responsibility, and whether the scope of such investigation may involve many persons or few, does not alter the rule. The scope of the investigation is not narrowed in cases where it is necessary to discover the offense as well as to fix the responsibility for its commission. In this case the return shows that the grand jury had information which would naturally lead it to believe that some of the taxpayers of the county had made false tax returns as to the amount of money on hand, March 1, 1913, and that some of such taxpayers had committed perjury in swearing to the assessment sheets containing lists of their taxable property. For the purpose of ascertaining who, if anyone, was guilty of one or the other or both of such offenses, the grand jury had a right to interrogate appellant concerning the deposit of Horace G. Brown, or of any other taxpayer of the county. It is not to be reasonably supposed that the grand jury would spend time by inquiring about the deposits of persons who were not likely to have money on deposit. The court has power to discharge a grand 4. jury, and it would be justified in exercising such power in case time was being wasted in an idle or fruitless investigation. This power of discharging a grand jury and thus of putting an end to an investigation which, by reason of its unwarranted and unreasonable scope, is unnecessarily consuming the time of the grand jury and of the witnesses called before it, and which is not likely to be productive of results, is one which should be exercised with caution and only in proper cases. A witness called before such

grand jury has no right to base an objection to a question upon this ground, and so long as the court permits the investigation to proceed, the witnesses called must answer all proper questions propounded.

The facts stated in the return show that the witness did not possess the information necessary to enable him to answer the question and that in order to obtain it he would have to consult the books of the bank. Appellant takes the position that a witness may be compelled to testify to such facts only as are within his knowledge, and that the court may not require him to do anything in order to obtain information upon which to base his testimony. Appellant asserts that such a requirement by the court would amount to demanding the particular services of the witness in violation of Art. 1, §21 of our State Constitution. A similar question was presented and decided adversely to appellant's contention in the case of *Washington Nat. Bank* v. *Daily* (1906), 166 Ind. 631, 77 N. E. 53. Where the source of the information is exclusively or peculiarly within the control of the witness, the court, acting within reasonable bounds and in the exercise of a sound discretion, may require the witness to avail himself of such information and to communicate it to the court.

The trial court properly sustained appellee's motion to quash the return of appellant and the judgment is affirmed.

NOTE.—Reported in 108 N. E. 7. As to courts and tribunals authorized to punish for contempt, see 117 Am. St. 950. See, also, under (1) 9 Cyc. 44; (2) 20 Cyc. 1335; (3) 20 Cyc. 1346; (4) 20 Cyc. 1332; (5) 20 Cyc. 1346.