[Civ. No. 6388. Fourth Dist. Sept. 23, 1960.]

PAT FRANCIS MICHAELS, Petitioner, v. SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent.

James C. Monroe and George H. Chula for Petitioner.

Stanley Mosk, Attorney General, Charles A. O'Brien, Chief Assistant Attorney General, Jack E. Goertzen, Deputy Attorney General, William O. Mackey, District Attorney, and Roland Wilson, Deputy District Attorney, for Respondent.

GRIFFIN, P. J.—Petitioner seeks a writ of prohibition restraining the respondent from proceeding further with its consideration of a matter wherein petitioner is charged with contempt of court by reason of his refusal to answer questions at a hearing before the Riverside County Grand Jury.

The petition and supporting documents and the transcripts of the proceedings before the grand jury and the respondent court show that the following events have occurred:

On June 17, 1960, the Riverside County Grand Jury was investigating whether certain crimes of violence, amounting to felonies and conspiracies to commit crimes of violence were committed or existed in the city of Elsinore in Riverside County as charged by petitioner in a television program entitled "The City of Hate" which was broadcast on December 11, 1959.

On June 17, 1960, petitioner appeared before the grand jury pursuant to a subpoena and was asked certain questions seeking to elicit petitioner's sources of information concerning crimes or conspiracies occurring within the city of Elsinore during the last three years. He was asked if he was a television commentator for Station KTLA, Channel 5, on April 6, 1960, if he broadcast a certain "Big Three" program on April 7, 1960 and made certain remarks derogatory to certain people in the city of Elsinore. He was also asked if during the television broadcast he had stated, in part:

"We know who they are, or at least who some of them are, and are willing to turn our files over to the proper law-enforcement agencies who will protect the constitutional rights of the people of that city."

Petitioner was asked whether he would turn over to the grand jury information concerning crimes occurring in the city of Elsinore involving persons other than himself. Petitioner refused to answer all of these questions, basing such refusal upon the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and upon the privilege of section 1881, subdivision 6, of the Code of Civil Procedure. Thereafter the grand jury unanimously agreed to cite the petitioner for contempt by reason of his refusal to answer.

On July 7, 1960, there was filed with the respondent court a verified "request for hearing" on charge of contempt alleging in substance that the above-described events had occurred, that defendant was believed to have information concerning the alleged commission of the crimes referred to and that defendant was not accused of or charged with the commission of

any of the alleged crimes. The "request for hearing" sought the issuance of an order to show cause commanding petitioner to appear in respondent court and show cause why he should not be punished for contempt by reason of his refusal to answer the questions put to him before the grand jury. Appended to the "request for hearing" and incorporated therein by reference was a transcript of the petitioner's testimony in his appearance before the grand jury.

On July 7, 1960, an order was issued by Judge Gabbert of the respondent court commanding petitioner to appear before the court on July 29, 1960, to ". . . show cause, if any he has, as to why he should not be deemed in contempt of Court for refusal to answer questions propounded to him by the Riverside County Grand Jury . . . and be punished according to law."

On July 29 at 10 a.m. petitioner, through his counsel, appeared in Judge Gabbert's court and the matter was immediately assigned to Judge Bucciarelli of that court. At that time petitioner did not orally or otherwise announce that that judge was prejudiced. Since there are seven superior court judges in Riverside County, we will assume the courts there operated under a master calendar system. The record is not altogether clear in this respect but the parties, in open court here, agreed that Judge Gabbert was in charge of the regular calendar that morning and assigned out the several cases appearing thereon to other departments and that this cause was assigned as indicated. Petitioner had no previous notice that this particular judge was to hear the matter. After such assignment and before the hearing on the merits was commenced, counsel for petitioner announced that petitioner was appearing specially and objected to proceeding further at that time. The court then stated that the "point here is whether or not this respondent is properly here today" and counsel agreed. The sufficiency of the order to show cause was then attacked on the ground that the court did not acquire jurisdiction of petitioner's person and also claimed that the court had no jurisdiction and was without power to punish him for contempt. In this connection, it was argued that the court had no jurisdiction because it had ordered petitioner to show cause why he should not be deemed in contempt of court for failure to answer questions propounded to him by the grand jury rather than indicate to him that he should appear and show cause why he should not be ordered to answer certain speci-

fied questions before the grand jury or, on his failure to do so, to be punished for contempt.

Considerable argument ensued on the points presented. The court denied the motion on the claimed special appearance. The trial judge asked if petitioner was in court and represented by counsel. The answer was in the affirmative and his attorney announced to the court that he was now before it for the first time on the general appearance and petitioner immediately filed with the clerk in that court an affidavit of prejudice under section 170.6 of the Code of Civil Procedure.

The court, after some discussion, struck the affidavit from the files, stating that it had been filed too late, since the hearing on the matter had already commenced, and that it had not been filed in accordance with the provisions of section 170.6, Code of Civil Procedure, *supra.* That section provides in part, in subdivision 1:

"No judge . . . shall try any civil or criminal action or *special proceeding of any kind or character* nor hear *any matter therein* which involves a contested issue of *law or fact* when it shall be established as hereinafter provided that such judge is prejudiced against any party or attorney . . . appearing in such action or proceeding."

Subdivision 2 of the same section provides in part:

"Any . . . attorney appearing in any such action or proceeding may establish such prejudice by an oral or written motion without notice supported by affidavit that the judge before whom such action or proceeding is pending or to whom it is assigned is prejudiced. . . . If directed to the *trial of a cause* where there is a *master calendar*, the motion shall be made *to the judge supervising the master calendar not later than the time the cause is assigned for trial.* . . . If the motion is directed to a hearing (other than the trial of a cause), the motion must be made not later than the *commencement of the hearing.* In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be."

It therefore appears that since the petitioner did not make and file his motion of prejudice to the judge supervising the master calendar, but awaited the outcome of a ruling of the judge to which the *cause* was assigned before making his motion and filing his affidavit, there was no compliance with the statute and the trial court was authorized to strike it from the files.

Furthermore, the entire cause was assigned for hearing and

determination by the judge. The so-called special appearance, judging from the argument, was not altogether confined to the question of notice and jurisdiction of the person but involved the power of the grand jury to "compel a witness to testify, unless the court, after proper proceedings, orders him to testify" and that such testimony can be given only before the grand jury and not in the presence of the court and the general public. It was also argued, in this connection, that sections 1985 to 1991, inclusive, of the Code of Civil Procedure, pertaining to punishment for contempt, disobedience to a subpoena, etc., set forth the procedure necessary to follow in the instant proceeding. It was also claimed that the court had no jurisdiction *over the matter* without first directing the petitioner here to answer the questions propounded by the grand jury. The court then cited *Ex parte Rowe*, 7 Cal. 181, 184, as indicating the proper procedure and denied the motion and directed counsel to proceed. Thereafter the affidavit of prejudice was filed and the question of the court's jurisdiction and the procedure again arose, and the court announced that it would follow the procedure indicated in *Ex parte Rowe, supra, i.e.*, to avoid making public testimony to be taken before the grand jury the question could be propounded of the witness in writing by the judge and counsel could make any objections thereto desired, and the court would rule whether the witness should answer the question, and if ordered to do so he would write the answer out and, after being transcribed, the question and answer would be delivered to the grand jury, and if he refused to answer he would be in contempt of court; that accordingly the questions and answers would not necessarily be known to any person but the officers of the court, the witness and his counsel. ▮▮ It is the law that even a judge must not be present during deliberations of the grand jury unless asked for advice. (Pen. Code, § 925.) Many of the Penal Code sections now applicable to grand jury proceedings were not in existence at the time of the Rowe decision. Citing many of the Penal Code sections applicable, it is said in volume 43, California Law Review, at page 265, that:

"The right and duty of the grand jurors to conduct their investigations, deliberations and voting in secret, which were won and established in England, are substantially the same for the modern California grand jurors. A court can only require them to disclose the testimony of a witness who appeared before them for the purposes of ascertaining whether it is consistent with testimony given by the witness in the

court or ascertaining the validity of a charge that the witness is guilty of perjury. . . . The hard-won right of secrecy thus remains substantially unimpaired in California.''

The petitioner was then ordered to take the witness stand. ■ In a contempt proceeding, the defendant cannot be compelled to testify. (*In re Ferguson*, 123 Cal.App.2d 799 [268 P.2d 71].) Strenuous objection was made to this contemplated procedure. Application was made to the court for a continuance to obtain a writ of prohibition and an adjournment was had until the following court day. An order to show cause was issued out of this court together with a temporary restraining order. A return was made and a hearing was had.

We are convinced, from an examination of the record, that there was not sufficient compliance with section 170.6, Code of Civil Procedure, and that the questions attempted to be raised on the claimed special appearance and the claimed general appearance were so intermingled as to constitute but one hearing of the cause and that the affidavit of prejudice was not filed at the commencement of the hearing and came too late. ■ In *Judson* v. *Superior Court*, 21 Cal.2d 11 [129 P.2d 361], it was held (quoting from the syllabus):

''Whether an appearance is general or special is determined by the character of the relief sought, not by the intention of the party that it shall or shall not operate as one or the other. His statement that he is making a special appearance is not conclusive.''

See also *Donovan* v. *Superior Court*, 39 Cal.2d 848 [250 P.2d 246]. ■ Furthermore, instead of filing the disqualifying affidavit at the time of the first hearing, petitioner awaited the court's decision on the motion and then, having found that it was against him, endeavored to disqualify that judge from determining many of the same issues subsequently raised on the hearing. In speaking of this practice, our Supreme Court said, in *Jacobs* v. *Superior Court*, 53 Cal.2d 187, 188 [1 Cal.Rptr. 9, 347 P.2d 9] in the syllabus:

''Where after trial of a case, supplementary proceedings are instituted under such circumstances that they must be deemed continuations of a prior proceeding, involving questions which the judge who tried the case is ordinarily in the best position to pass on, a litigant should not be allowed to gamble on obtaining a favorable decision from one judge and then, if confronted with an adverse judgment, be permitted to disqualify him without presenting facts showing prejudice (Code Civ. Proc., § 170.6) in the hope of securing a different

ruling from another judge in supplementary proceedings involving the same issues.''

■ Secondly, the order to show cause did set forth, as a part thereof, the request of the grand jury, reciting, under oath by its foreman, all of the factual background in reference to the pending investigation, that petitioner had knowledge of the alleged commission of crimes therein mentioned; that the questions propounded and answered, refused or given, were set forth in an attached transcript, duly certified by the official court reporter and marked ''Exhibit A,'' and the order to show cause, duly served, did direct petitioner to appear to show cause as to why he should not be ''deemed in contempt of court for refusal to answer questions propounded to him by the grand jury'' as set forth in the request for hearing attached. While the order may have been technically incorrect in not ordering petitioner to show cause why he should not be ordered to answer the questions before the grand jury, we are convinced the order was sufficient to apprise petitioner of the nature of the proceeding and the issues to be met and there was no lack of due process. (Code Civ. Proc., §§ 187, 1211-1212; *Rogers* v. *Superior Court,* 145 Cal. 88 [78 P. 344]; *Baker* v. *State,* 183 Ind. 1 [108 N.E. 7]; *In re Ferguson,* 123 Cal.App.2d 799, *supra; Freeman* v. *Superior Court,* 44 Cal.2d 533 [282 P.2d 857]; *Green* v. *Gordon,* 39 Cal.2d 230 [246 P.2d 38].)

■ The remaining question involves the propriety of the procedure the court was pursuing in determining the question whether petitioner was legally obliged to answer the questions propounded and whether its determination of the method of procedure was proper in ascertaining whether petitioner should be cited for contempt. We are convinced that the method being pursued by the trial judge was not authorized under the present laws and decisions. It is true that the Rowe case, decided 103 years ago, relied on by the court, did indicate that the question of making public the proceedings before the grand jury could be avoided by propounding the questions in writing. This statement was, in effect, dicta, and the writ of habeas corpus was granted on the ground that the warrant of commitment did not sufficiently set forth the act to be performed. We find no subsequent authority so holding or indicating this procedure is presently proper. On the other hand, there is a plethora of authorities approving what we believe to be a more workable procedure. *Rogers* v. *Superior Court, supra,* 145 Cal. 88, was a similar proceeding and the court

there determined that certain questions should have been answered and directed the witness to again appear before the grand jury and answer them. The court held, upon such refusal, that there was a "direct disobedience" of the former order and therefore petitioner was guilty of contempt. To the same effect is *Hotaling* v. *Superior Court,* 191 Cal. 501 [217 P. 73, 29 A.L.R. 127]; *In re Rogers,* 129 Cal. 468 [62 P. 47]; and *In re Lemon,* 15 Cal.App.2d 82 [59 P.2d 213]. In *In re Greenleaf,* 176 Misc. 566 [28 N.Y.S.2d 28, 30], the court directed the witness to return to the grand jury room to make answer. There counsel for the witness stipulated it would be useless to do so because he would again refuse to answer and after reiterating his refusal to the trial court he was found guilty of contempt. See also *Gendron* v. *Burnham,* 143 Me. 387 [82 A.2d 773, 785], where it was said:

"If the court rules against the privilege he cannot then be punished for contempt unless and until he has been given an opportunity to return before the grand jury and answer such question or questions as the court has ruled are not privileged and has directed him to answer . . . it is the *unjustifiable refusal* to answer a question before the grand jury that constitutes contempt."

To the same effect is *Baker* v. *State, supra,* 183 Ind. 1 [108 N.E. 7] and *In re Start's Petition,* 186 Pa. Super. 509 [142 A.2d 449]. In *In re Hitson,* 177 F.Supp. 834, the court followed a similar procedure to cite a party for contempt of court for refusal to answer questions before a grand jury and referred to title 18, U.S.C.A., Federal Rules of Criminal Procedure, rule 42 (a).

 Finally, as to the function of the writ of prohibition, this court said, in discharging the writ in *St. Clair Estate Co.* v. *Superior Court,* 41 Cal.App.2d 389, 393 [107 P.2d 45], quoting from *C. S. Smith Metropolitan Market Co.* v. *Superior Court,* 16 Cal.2d 226 [105 P.2d 587]:

" 'The function of the writ of prohibition is to provide a remedy when rigidity of the ordinary procedure fails to protect a litigant from the wrongful exercise of jurisdiction by a court. . . . But the mere showing that an inferior court is about to do an act beyond the scope of its powers is not enough to justify the issuance of the writ. In other words, the writ may not be used to restrain the commission of error or to regulate or control procedure. Many orders which are made during the progress of a case depend for their validity upon the jurisdiction of the court, but, ordinarily, prohibition may

not be invoked to challenge such rulings. If that were allowed, the trial of an ordinary civil action would be constantly interrupted by attacks upon procedural orders which are properly reviewable upon appeal. . . . ▆ These basic principles have been applied in cases where it is claimed that one must either comply with an order, which it is asserted the trial court had no jurisdiction to make, or be subjected to the penalties for contempt of court. In such cases, it has been repeatedly held that prohibition will not be granted upon the ground that the trial court has erred in making the order upon which the charge of contempt is, or may be, based. The remedy of the one against whom such an order is directed is to present his defense upon the hearing of the contempt proceeding, and then, if found guilty, to apply for a writ of *certiorari* or *habeas corpus.*' "

It is to preclude a further application for a similar writ that we have deemed it advisable to discuss the main question presented as to procedure.

Stay of proceedings annulled. Writ denied.

Shepard, J., and Coughlin, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied November 16, 1960.