[L.A. No. 27584.    In Bank.    Jan. 28, 1964.]

JAMES R. McCLENNY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; FARMERS & MERCHANTS TRUST COMPANY OF LONG BEACH, as Special Administrator, etc., et al., Real Parties in Interest.

Brock & Shapero, Martin M. Shapero and Edwin S. Saul for Petitioner.

Harold W. Kennedy, County Counsel, and Donald K. Byrne, Deputy County Counsel, for Respondents.

James A. Hayes, John D. Miller and Clyde L. Bron. for Real Parties in Interest.

TOBRINER, J.—This is another in the protracted series of cases requiring interpretation of section 170.6 of the Code of Civil Procedure. The sole issue turns upon whether a notice of motion to disqualify a trial judge is timely when filed prior to a proceeding on an indirect contempt which is supplementary to a domestic relations action. For the reasons

which we set forth below, we have concluded that such notice of motion is not timely.

Dora S. McClenny, now deceased,[1] initiated a divorce action against defendant James R. McClenny on October 5, 1961. Judge John F. McCarthy presided at all of the numerous contested hearings in the action.[2] In the year and one-half succeeding the filing of suit Judge McCarthy heard evidence and rendered decisions relating to alimony, custody and support of the McClenny children,[3] and appointment of a receiver to administer the McClennys' property.[4]

On April 25, 1963, four and one-half months after Judge McCarthy granted plaintiff an interlocutory decree of divorce and awarded her custody of Robin Lyn McClenny, defendant filed a notice of motion requesting that Judge McCarthy modify the custody order by awarding custody of Robin Lyn to defendant. On the following day plaintiff obtained an order to show cause re contempt, signed by Judge McCarthy, based upon defendant's refusal to return Robin Lyn to plaintiff's custody after a recent visitation period. On May 10, 1963, plaintiff obtained a second order to show cause re contempt, signed by Judge McCarthy, based upon defendant's sale of several items of personal property in violation of the receivership order and upon defendant's failure to keep records of money received and obligations paid as required by the receivership order.

Defendant's motion and the two contempt matters were

[1]Mrs. McClenny's estate is represented in this action by a special administrator, the Farmers and Merchants Trust Company of Long Beach.

[2]The following matters were tried before Judge McCarthy: the initial contested hearing on alimony pendente lite, child custody, and child support of October 25, 1961; the initial contested hearing on the appointment of a receiver of January 17, 31 and February 23, 1962; the contested hearing on the expansion of the receivership of July 18 and 19, 1962; the contested hearing on the modification of support awards of July 27, 1962; the hearing resulting in the interlocutory decree of December 13, 1962; the contested hearing on defendant's motion to dissolve the receivership of March 5, 1963.

[3]The court awarded custody of Robert Wayne and Debra Sue McClenny to defendant, and Robin Lyn McClenny to plaintiff.

[4]The court ordered a receiver to take possession of all of the real and personal property of both plaintiff and defendant, to collect all rents, issues, and profits of the property, and to pay plaintiff alimony and child support in accordance with the court's orders. The court expressly enjoined both parties from interfering with the activities of the receiver and ordered them to deliver any property in their possession to the receiver.

noticed for hearing on May 22 before Judge McCarthy. Within five days of the time set for such hearing defendant filed a notice of motion and affidavit of prejudice under section 170.6 of the Code of Civil Procedure seeking to disqualify Judge McCarthy from hearing the pending contempt matters. Judge McCarthy denied the motion to disqualify on the ground that the contempt proceeding was a continuation of the original action within the meaning of *Jacobs* v. *Superior Court* (1959) 53 Cal.2d 187 [347 P.2d 9], and *Stafford* v. *Russell* (1962) 201 Cal.App.2d 719 [20 Cal.Rptr. 112].

Defendant now seeks a writ of prohibition to restrain Judge McCarthy from hearing the pending contempt proceedings.

We turn first to a discussion of several recent cases which have established the principles which control the interpretation to be given section 170.6. We then show how the principles established by these cases apply to the instant case. We finally indicate why the defendant's formal categorization of contempt proceedings as quasi-criminal does not suffice to defeat the conclusion that the motion to disqualify was not timely.

Section 170.6 of the Code of Civil Procedure provides that no judge shall try any action or special proceeding when it is established by an affidavit that he is prejudiced against a party or attorney so that the party or attorney cannot, or believes he cannot, obtain a fair and impartial trial before such judge. Facts showing prejudice need not be alleged or proved; upon the timely making of a motion of disqualification, supported by an affidavit alleging prejudice, the case or matter, without any further act or proof, must be assigned to another judge for trial or hearing. ''In no event shall any judge entertain such motion if it be made ... after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced.'' (Code Civ. Proc., § 170.6, subd. (2).)

In denying defendant's motion pursuant to section 170.6 the trial court correctly relied upon *Jacobs* v. *Superior Court, supra,* 53 Cal.2d 187; that case is a polestar in the section 170.6 firmament. In *Jacobs* petitioners moved, under section 170.6, to disqualify Judge Rhodes from hearing their motion to modify a custody order which the same judge had previously issued. This court held that Judge Rhodes properly denied the motion since the modification proceedings constituted nothing more than a continuation of the original

custody proceedings.[5]

The decision in *Jacobs* compels us to focus our inquiry upon the single question of whether the contempt proceeding in the instant case is a continuation of the original domestic relations action or whether it is a separate and independent proceeding.

The result of the *Jacobs* case has been a catenation of cases fashioning basic rules for determining whether a particular proceeding is a continuation of a prior action or a separate and independent action. These cases fall into two general groups. One group includes those decisions in which the section 170.6 motion is made after the commencement of the principal action but prior to the undertaking of supplementary proceedings. The other includes decisions in which the motion is made prior to the commencement of the principal action but after the undertaking of preliminary proceedings. We proceed to a discussion of both groups of cases.

Several cases have held that a motion pursuant to section 170.6 is not timely when made prior to supplementary proceedings similar to the instant contempt proceeding. In *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal. App.2d 678 [32 Cal.Rptr. 288] defendants claimed costs and disbursements under Code of Civil Procedure section 1255a after the plaintiff school district abandoned its eminent domain proceeding. Prior to the date set for hearing on the school district's motion to reduce defendant's claim for costs and disbursements, the school district moved to disqualify the judge who had presided at the original eminent domain proceeding and who was scheduled to preside at the section 1255a hearing. Placing special emphasis on the requirement that in a section 1255a proceeding the party claiming costs and disbursements must "show that the items charged were for matters *necessarily relevant and material to the issues*

---

[5]The court's holding is summarized in the following statement: "If a disqualification were permitted under section 170.6 in matters which are continuations of a prior proceeding, it would mean that the judge who tried the case, and who is ordinarily in the best position to pass upon the questions involved, could by a mere general allegation of prejudice ... be disqualified from hearing such matters as motions for modification of a support order or an injunction, as well as motions for change of custody of children. Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, if confronted with an adverse judgment, allow them to disqualify him without presenting facts showing prejudice, in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially the same issues." (*Id.* at p. 191.)

*involved in the* [original] *action,''* the court held that the section 1255a proceeding was a continuation of the original action. (*Id.* at p. 699.)

In *Stafford* v. *Russell, supra,* 201 Cal.App.2d 719, plaintiff violated an injunction issued by Judge Rhone in an action for declaratory relief originally brought by plaintiff. Judge Rhone held plaintiff in contempt and sentenced him to jail. After the District Court of Appeal denied plaintiff's petition for habeas corpus, Judge Rhone issued an order to show cause why plaintiff should not complete his sentence. Prior to the date for hearing on the order to show cause, plaintiff moved to disqualify Judge Rhone under section 170.6. Holding that Judge Rhone properly denied the motion, the court stated that ''The order to show cause hearing . . . was obviously a continuation of the hearing on contempt and was supplemental *in that it was sought to carry out the original judgment and order of contempt. . . .''* (*Id.* at p. 721; italics added.)

*People* v. *Rojas* (1963) 216 Cal.App.2d 819 [31 Cal. Rptr. 417], involved a hearing to modify or revoke probation. The court held that such a hearing, for the purposes of section 170.6, merely continued the original guilt trial.[6] Likewise, *Pappa* v. *Superior Court* (1960) 54 Cal.2d 350 [5 Cal. Rptr. 703, 353 P.2d 311], declared that a retrial in a capital case did not become a separate and independent action for purposes of section 170.6.[7]

In *People* v. *Paramount Citrus Assn.* (1960) 177 Cal.App. 2d 505 [2 Cal.Rptr. 216], defendant moved to disqualify the trial judge who had heard the case originally but whom the appellate court reversed on appeal and ordered to take new evidence in conformance with its opinion. On a subsequent appeal the court held that the trial judge properly denied the section 170.6 motion because ''the new judgment to be entered after the further proceedings in the trial court would be based upon the evidence taken at the original trial as supplemented by the additional evidence required to be taken.''[8] (*Id.* at p. 512.)

---

[6]Accord *People* v. *Smith* (1961) 196 Cal.App.2d 854 [17 Cal.Rptr. 330] (dictum).

[7]Accord *Agnew* v. *Cronin* (1961) 197 Cal.App.2d 535 [17 Cal.Rptr. 273].

[8]In addition to the above discussed cases see *Haldane* v. *Haldane* (1962) 210 Cal.App.2d 587 [26 Cal.Rptr. 670] [hearing to determine attorney's fees held continuation of original divorce action]; *Dennis* v. *Overholtzer* (1960) 179 Cal.App.2d 110 [3 Cal.Rptr. 458] [hearing on motion to continue injunction in effect pending appeal held continuation of original action].

Several cases have also held that a section 170.6 motion comes too late when filed after the judge has decided preliminary contested matters. Thus in *Michaels* v. *Superior Court* (1960) 184 Cal.App.2d 820 [7 Cal.Rptr. 858], defendant appeared specially to challenge the jurisdiction of the trial court in a contempt action. After the trial judge rejected defendant's jurisdictional challenge, defendant moved to disqualify the judge from hearing the contempt matter. The appellate court affirmed the denial of defendant's motion.[9] On similar facts the court in *Robinson* v. *Superior Court* (1960) 186 Cal.App.2d 644 [9 Cal.Rptr. 130], held that a motion under Code of Civil Procedure section 170 (disqualification for cause) was not timely when filed subsequent to the preliminary hearing, the court stating that "[P]arties claiming that a judge is disqualified cannot participate in a proceeding before him and, after they have lost the 'first round,' attempt to disqualify him as to the remaining 'rounds.' " (*Id.* at p. 649.)[10]

---

[9]See *People* v. *Ashley* (1963) 59 Cal.2d 339 [29 Cal.Rptr. 16, 379 P.2d 496] [section 170.6 motion not timely when filed after preliminary sanity hearing but prior to guilt trial]; *Thompson* v. *Superior Court* (1962) 206 Cal.App.2d 702 [23 Cal.Rptr. 841].

[10]Statutes similar to section 170.6 exist in many states. Only a few decisions construing these statutes in cases similar to the instant case have been found, however. A few courts have taken a position directly contrary to this court's holding in *Jacobs* v. *Superior Court*. (*Price* v. *Featherstone* (1942) 64 Idaho 312 [130 P.2d 853, 143 A.L.R. 407]; *Bedolfe* v. *Bedolfe* (1912) 71 Wash. 60 [127 P. 594]; *State* ex rel. *Mauerman* v. *Superior Court* (1954) 44 Wn.2d 828 [271 P.2d 435].) Nevertheless, the principles which underlie *Jacobs*—prevention of "judge-shopping" and disqualification of the judge most familiar with a case—have been widely recognized. (*State* ex rel. *Tittmann* v. *Hay* (1936) 40 N.M. 370 [60 P.2d 353]; *State* ex rel. *Stevens* v. *Superior Court* (1914) 82 Wash. 420 [144 P. 539] [alternative holding]; *Dagley* v. *Dagley* (Mo. App. 1954) 270 S.W.2d 553; *State* ex rel. *Weltmer* v. *Taylor* (1928) 42 N.M. 405 [79 P.2d 937]; *Peckham* v. *Ronrico Corp.* (1st Cir. 1961) 288 F.2d 841; *State* ex rel. *White* v. *Smith* (1942) 220 Ind. 536 [45 N.E.2d 204]; *Marsin* v. *Udall* (1955) 78 Ariz. 309 [279 P.2d 721].) We have found only one case presenting a situation substantially similar to the instant one. In *Hallett* ex rel. *State* v. *Hallett* (1936) 153 Ore. 63 [55 P.2d 1143], the court reached a decision directly contrary to our position in the present case. Since the court in *Hallett* also held that a custody modification proceeding is a separate action and thus ruled contrary to our decision in *Jacobs*, the case does not stand as authority which can affect our disposition of the present case. Moreover, several courts have reached results in closely analogous cases consonant with our decision. (E.g., *Arizona Conference Corp.* v. *Barry* (1951) 72 Ariz. 74 [231 P.2d 426] [motion filed prior to hearing on permanent injunction but subsequent hearing on temporary injunction held not timely]; *Rex Mortgage Loan Co.* v. *Stanfield* (1952) 194 Ore. 698 [244

684

Thus the holding in *Jacobs* v. *Superior Court* has been frequently applied, restated, and amplified. ▮ The gravamen of the *Jacobs* decision establishes that a proceeding· is a continuation of the original action out of which it arises if it involves "substantially the same issues" as the original action. The most recent case interpreting the section, *Oak Grove School Dist.* v. *City Title Ins. Co., supra,* 217 Cal.App. 2d 678, 699, cogently restated the rule and held that the presentation in the supplementary proceeding of "matters *necessarily relevant and material to the issues involved in the* [original] *action*" stamped the supplementary proceeding as a continuation of the original action.[11]

▮ In applying to the instant situation the principles announced by the cases, we note the substantial degree of similarity and even identity between the issues to be raised in the pending contempt proceeding and the issues previously presented to Judge McCarthy. A considerable imbrication occurs because in the original proceedings Judge McCarthy considered a broad array of issues relating to the jurisdiction of his court and the validity of the orders allegedly contemned. These issues may properly be urged in the pending contempt proceeding. (*Brady* v. *Superior Court* (1962) 200 Cal. App.2d 69 [19 Cal.Rptr. 242].) Moreover, the issues as to defendant's alleged contempts congealed at the August 23 hearing before Judge McCarthy when plaintiff raised them as an affirmative defense .to defendant's motion to remove the receiver.

Although the issues to be presented in the contempt proceeding may not be identical in every particular to the issues previously submitted to Judge McCarthy, the questions involving the interpretation of the orders allegedly contemned, and indeed, the issue of whether defendant in fact violated Judge McCarthy's orders, are "matters *necessarily relevant and material to the issues involved in the* [original] *action.*" (*Oak Grove School Dist.* v. *City Title Ins. Co., supra,* 217 Cal.App.2d 678, 699.)

Finally, as the court said in *Jacobs*, the "judge who tried the case ... is ordinarily in the best position to pass upon the questions involved," and to hear matters involving the same or closely related issues. (*Jacobs* v. *Superior Court, supra,* 53

P.2d 173] [motion filed prior to new trial where statute entitles party to trial de novo]; *State* ex rel. *White* v. *Smith* (1942) 220 Ind. 536 [45 N.E.2d 204]; *Kelly* v. *Gerdink* (1944) 222 Ind. 105 [52 N.E.2d 43].)

[11]See also *Thompson* v, *Superior Court* (1962) 206 Cal.App.2d 702 [23 Cal.Rptr. 841].

Cal.2d 187, 191.) The instant action has been in Judge Mc-Carthy's court for over a year and one-half.[12] Prior to the hearing on the section 170.6 motion Judge McCarthy has presided at seven separate hearings involving contested issues in the case.[13] Some of these contested matters involve difficult problems raised in a determination of child custody; others involve highly complex problems relating to the receivership of the family assets.[14] Judge McCarthy is the only judge familiar with the extensive and complicated facts and issues of this litigation. In the words of the *Jacobs* case, Judge McCarthy is "in the best position to pass upon the questions involved." (*Id.* at p. 191.)

Turning to defendant's countercontention, we note that he relies upon the quasi-criminal nature of contempt proceedings in presenting a twofold proposition. He first argues that because he may suffer criminal sanctions by virtue of the contempt proceeding, we should resolve all judicial doubt in his favor by sustaining the timeliness of his motion; he next contends that the quasi-criminal nature of contempt in itself converts the proceeding into a separate action.

As to the first argument, section 170.6 draws no distinction between civil and criminal actions.[15] This court in *Pappa* v. *Superior Court, supra,* 54 Cal.2d 350, expressly rejected an interpretation of section 170.6 which gave weight to the criminal nature of the proceeding there in question. Moreover, its legislative and judicial history suggests that we must apply section 170.6 with restraint. Thus in *Johnson* v. *Superior Court* (1958) 50 Cal.2d 693 [329 P.2d 5], in upholding the constitutionality of section 170.6, we relied heavily upon the safeguards of the statute designed to minimize

[12]The register of actions in the trial court shows more than 175 entries relating to this action.

[13]See fn. 2, *supra.*

[14]Defendant waived findings of fact to the August 2, 1962, order expanding the receivership. The order followed two full days of testimony before Judge McCarthy. The pending contempt proceeding involves alleged violations by defendant of the August 2 order, and Judge McCarthy is the only judge who knows the evidence upon which he based the order.

[15]Section 170.6, as originally enacted in 1957 did not provide for disqualification in criminal cases. The court in *Johnson* v. *Superior Court* (1958) 50 Cal.2d 693 [329 P.2d 5], explained this exclusion on the theory that the Legislature could have concluded that greater possibility of abuse of the power to disqualify exists in criminal than in civil cases. A 1959 amendment made section 170.6 applicable to criminal actions.

the possibility of its abuse by litigants and their counsel. Among these safeguards is the provision requiring "timely making of the challenge before trial." (*Id.* at p. 697.)[16]

Chief Justice Gibson, writing in *Pappa* v. *Superior Court, supra,* 54 Cal.2d 350, 354, aptly characterized the limitations of section 170.6 as follows: "... [I]t must be remembered that until the enactment of section 170.6 in 1957 a party seeking to disqualify a judge on the ground of bias had to allege and prove the facts relied upon to establish prejudice. That procedure, which is contained in section 170 of the Code of Civil Procedure, remains available in a criminal as well as a civil action. Section 170.6, as we have seen, relieves a party of the necessity of specifying the facts relied upon as the basis of disqualification upon the ground of bias, *and it thus extends a special privilege subject to the conditions set forth in the section.* As pointed out in *Johnson* v. *Superior Court,* these conditions were imposed as safeguards designed to minimize abuses of the privilege." (Italics added.)

As we have stated, defendant's second position rests upon the theory that we must hold that contempt proceedings are separate *because* they are quasi-criminal in nature. Dictum in the case of *In re Gould* (1961) 195 Cal.App.2d 172, 174 [15 Cal.Rptr. 326], epitomizes defendant's contention: "Since the [contempt] proceeding is essentially punitive and separate from the cause out of which it arises, all the prescribed procedural safeguards must be accorded the alleged contemner."[17]

---

[16]The Legislature enacted a predecessor to section 170.6 in 1937. This statute, Code of Civil Procedure section 170.5, was identical in substantive effect to the present section 170.6, except that it did not require an affidavit of bias or prejudice. In 1938 this court held section 170.5 unconstitutional on the ground that it constituted an unwarranted interference with the orderly processes of the courts. (*Austin* v. *Lambert* (1938) 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849].) In section 170.6, enacted in 1957, the Legislature sought successfully to overcome the constitutional objections to section 170.5. (*Johnson* v. *Superior Court, supra,* 50 Cal.2d 693.) Although the present statute is similar to those of many other states it is in abrogation of the common law rule limiting recusation to cases in which the judge had an interest in the cause of action. (See Note (1927) 41 Harv.L.Rev. 78.)

[17]In *Ex parte Gould* (1893) 99 Cal. 360, 362 [33 P. 1112, 37 Am.St. Rep. 57, 21 L.R.A.751], the court, in deciding whether an alleged contemner had a right not to take the witness stand in the contempt hearing, stated: " ' Although the alleged misconduct of the defendants occurred in the progress of a civil action, the proceeding to punish them for such misconduct is no part of the process in the civil action, but is in the nature of a criminal prosecution. ...' " See also *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146 [314 P.2d 164] [failure of

We have noted *supra* that *Pappa* rejects an interpretation of section 170.6 which emphasizes the criminal nature of the proceeding in question. Moreover, *Pappa* makes it clear that section 170.6 is not to be treated as a "procedural safeguard" in the sense meant by the dictum in *In re Gould*. The issue in *Pappa* turned upon whether the two defendants held adverse interests for purposes of deciding if each of them would be entitled to a section 170.6 challenge. The court distinguished cases defining adverseness for purposes of the constitutional right to counsel, stating that, "[a] different situation is presented where, as here, a limited privilege is involved which would not be available in the absence of a special statute and cannot be exercised except in accordance with that statute." (54 Cal.2d at p. 355.)[18]

In any event, the dictum in *In re Gould* cannot be considered an immutable prescript. The cases have clearly held that contempt proceedings for some purposes do constitute continuations of the action from which they emanate. In a situation analogous to the instant case, the courts of this state have consistently ruled that indirect contempt proceedings may be maintained against a party over whom the court acquired personal jurisdiction in the principal cause, although notice of the order to show cause in the contempt matter was served only on the alleged contemner's attorney.[19]

Thus the proper resolution of the present case cannot rest upon defendant's formal categorization of contempt as quasi-criminal; a more fruitful approach lies in an evaluation of the actual function performed by the contempt proceeding. In domestic relations cases in particular, that function is one of enforcement of the court's orders. As the respondent court explained: "In deciding this question, consideration should

trial court to advise petitioners of constitutional privilege against self-incrimination in contempt proceedings arising out of domestic relations action]; *Gale* v. *Tuolumne County Water Co.* (1914) 169 Cal. 46 [145 P. 532] [right to appeal from judgment in contempt proceeding arising out of suit in equity].

[18]See also *People* v. *Ashley* (1963) 59 Cal.2d 339 [29 Cal.Rptr. 16, 379 P.2d 496]; *Stafford* v. *Russell* (1962) 201 Cal.App.2d 719 [20 Cal. Rptr. 112].

[19]*Kottemann* v. *Kottemann* (1957) 150 Cal.App.2d 483 [310 P.2d 49]; *Smith* v. *Smith* (1953) 120 Cal.App.2d 474 [261 P.2d 567]; *Olcott* v. *Superior Court* (1945) 68 Cal.App.2d 603 [157 P.2d 36]; *Shibley* v. *Superior Court* (1927) 202 Cal. 738 [262 P. 332]. Cf. *Ex parte Ah Men* (1888) 77 Cal. 198 [19 P. 380, 11 Am.St.Rep. 263]; *State* v. *Heiser*, (1911) 20 N.D. 357 [127 N.W. 72]; 17 Corpus Juris Secundum 157; 13 Corpus Juris 57.

be given to the fact that ... [although] generally contempt proceedings are considered as separate criminal proceedings, it would appear that domestic relations actions are peculiar in this respect—that for the support and custody of minor children, as well as other domestic relations matters, the decrees of the court must constantly be implemented by supplementary proceedings in the nature of contempt."[20]

In domestic relations actions the courts must exercise a continuing jurisdiction over the parties and over the subject matter of the action.[21] The trial court must perform continuing supervisory and enforcing functions, and the contempt proceeding is one of the court's two principal means of performing these functions.[22] In the early case of *Mitchell* v. *Superior Court* (1912) 163 Cal. 423 [125 P. 1061], this court held that section 1322 of the Penal Code and section 1881, subdivision 1, of the Code of Civil Procedure did not bar a wife from inaugurating, or supporting by affidavit, a proceeding in contempt against the husband for failure to pay ordered alimony and counsel fees. The court said the proceeding was not a "separate action," and that the prayer itself, seeking compliance with the court's command "clearly differentiates the proceeding from the ordinary criminal prosecution and emphasizes its quality as something ancillary to the divorce action." (P: 426.)

To hold that the contempt proceeding in the present case constitutes a separate and independent action would unduly impede the administration of justice. As respondent court

---

[20]See *Warner* v. *Superior Court* (1954) 126 Cal.App.2d 821, 824-825 [273 P.2d 897], in which the court stated that ''[a] proceeding in contempt for failure to pay alimony or support money is primarily a method of collecting money that cannot be realized through execution process. It is a coercive measure designed to compel obedience to the court's orders rather than one to vindicate the authority of the court by inflicting punishment.'' See also 2 California Family Lawyer (Cont. Ed. Bar, 1963) p. 1425.

[21]*Jacobs* v. *Superior Court, supra,* 53 Cal.2d 187; *Greene* v. *Superior Court* (1951) 37 Cal.2d 307 [231 P.2d 821]. In regard to the receivership aspect of the case, *Steinberg* v. *Goldstein* (1954) 129 Cal.App.2d 682, 685-686 [278 P.2d 22], is apposite; the court stated: ''The receiver ... is an agent and officer of the court and the property in his hands is under the control and *continuous supervision of the court.* ... [T]he main function of the court is to manage or dispose of the estate in the best manner possible and for the best interests of the parties concerned; ... *to effectually perform that duty necessarily requires some flexibility and continuity of jurisdiction....*'' (Italics added.)

[22]See 2 California Family Lawyer (Cont. Ed. Bar, 1963) p. 1386: ''The most common methods used to enforce divorce judgments and orders are contempt proceedings and, as in ordinary judgments, execution.''

recognized, "many defendants are constantly before the courts on contempt matters, and if each of these is to be considered a separate proceeding for the purpose of section 170.6, a not inconsiderable amount of judicial juggling will be required."

Acceptance of defendant's position would permit litigants to obtain, by repeated cycles of a contemptuous act and a motion based upon section 170.6, a perpetually fresh forum for testing disadvantageous decisions. We cannot ignore in defendant's position the potentiality for abuse of section 170.6. We cannot permit a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration.

We conclude that the contempt proceeding in the instant action is a continuation of the original domestic relations action, and that Judge McCarthy properly denied defendant's motion under section 170.6.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb. J., Peters, J., and Peek, J., concurred.