[Civ. No. 860. Fifth Dist. July 29, 1968.]

MARIE HELEN MERIDITH, Plaintiff, Cross-defendant and Appellant, v. RAY CLARK MERIDITH, Defendant, Cross-complainant and Respondent.

T. N. Petersen for Plaintiff, Cross-defendant and Appellant.

C. Ray Robinson and Roland V. Howard for Defendant, Cross-Complainant and Respondent.

CONLEY, P. J.—A complaint for separate maintenance was filed on July 28, 1966, by Marie Helen Meridith; it stated that the plaintiff and defendant had been married for over 23 years; that they had three children, two girls and a boy, born of their marriage; and that the parties owned community property as follows: two duplexes, membership in the Merced Golf and Country Club, a 1964 Dodge Four-Door Automobile, a 1966 Chevrolet Impala, a bank account in the United California Bank in Merced in the name of defendant, a National Service Life Insurance Policy on the life of defendant in the amount of $10,000, a savings account in Fresno Guarantee Savings & Loan Association of approximately $140, a joint bank account in Bank of America in Merced containing about $100, household furniture, fixtures, appliances in the family home rented by the parties at 1011 West 20th Street in Merced, and a real estate brokerage business known as Meridith's Realty with offices at 19th and "N" Streets in Merced. The complaint alleged that defendant had treated plaintiff with extreme cruelty, that plaintiff was the proper person to have custody of the three children, and that she should have allowances for support of her children and for herself, together with counsel fees. She requested that defendant be restrained from selling the community property and asked for an order of exclusive possession of the family home. Elledge and Dunford, an experienced firm of attorneys with offices in Modesto, were the attorneys of record for the plaintiff; Mr. Dunford personally handled the case for the plaintiff.

On August 8, 1966, the defendant filed an answer and also a cross-complaint for divorce, alleging that his wife had treated him with extreme cruelty; that the minor children should be awarded to the custody of the cross-complainant with a right of reasonable visitation reserved to the cross-defendant; and that cross-complainant was willing and able to pay a reasonable sum for the support of the children. The defendant prayed that plaintiff should be denied a decree of separate maintenance, but asked that the marriage be dissolved, that an equitable division of the community property be made, that the custody and control of the children be awarded jointly to the plaintiff and defendant, with reasonable visitation rights for both, and that the court fix a reasonable sum for defendant to pay for the children's support. On August 18, 1966, an amendment to the cross-complaint was filed in which Mr. Meridith alleged specific acts of extreme cruelty. Plaintiff and

cross-defendant filed an answer to the cross-complaint on August 23, 1966.

The clerk's minutes show that the hearing of the case was held on December 15, 1966, before Judge Gregory P. Maushart, and that David G. Dunford and C. Ray Robinson represented the respective parties. The minutes state that counsel informed the court that the parties entered into a stipulation which was recited to the court, but the details of which were not included in the minutes. Both parties and their counsel have admitted that there was no reporter present at the hearing. C. Ray Robinson told the court that the cross-complaint could be withdrawn. The court heard the divorce on the plaintiff's amended complaint, which was yet to be filed, accompanied by a default of the defendant. Plaintiff testified, as did Lynn Ann Meridith, a daughter of the parties. The minutes show that plaintiff was granted an interlocutory decree of divorce on the ground of extreme cruelty, that custody of the children was awarded jointly to the parties with the right of reasonable visitation reserved to each and the further order that when the children were in the physical custody of the mother defendant would pay $100 a month to her for the support of each child, but when they were in the physical custody of the defendant no payment would be made for the children during such period. Defendant was ordered to pay the plaintiff $200 a month for one year, and then $100 a month for the second year so that her earnings, whatever they might be, would be supplemented for a total income of $300, and that thereafter she would be paid $1.00 a year as alimony.

On December 27, 1966, some twelve days after the trial a written stipulation for the division of the community property, the payment of outstanding indebtedness and the custody and support of the children and alimony of the wife was filed. The stipulation was not signed by the parties but only by the respective attorneys; the document, prepared by Mr. Dunford, stated that it was made pursuant to the stipulation orally entered into before the court ". . . and audibly pronounced and approved in the presence of the parties . . ." on December 15, 1966. This written stipulation declared that the duplexes located in Merced would be community property and that they should be sold and the net proceeds divided equally between the parties; the encumbrances, taxes, and expenses of maintenance were to be paid by the defendant and he was to keep the rents, issues and profits derived from the duplexes until the sale thereof. Plaintiff was awarded the Dodge car, and defendant the Chevrolet with him paying whatever bal-

ance might be due on either one. Plaintiff was awarded the savings accounts in the Fresno Guarantee Savings & Loan and the Bank of America, which amounted to a small balance in each institution. Defendant was awarded the real estate brokerage business and the bank account in the United California Bank in Merced. The written stipulation recited that the household furniture and appliances had been physically divided between the parties. The stipulation further provided that defendant assign to plaintiff a promissory note of one Jack Wilhelm for $2,400, the proceeds to be applied to a debt owed by the parties to Anna Seno, mother-in-law of the plaintiff, in the amount of $3,000, with the further provision that after such application the defendant should pay any then unpaid amount on the debt to Mrs. Seno. The defendant undertook to pay the premiums on the National Service Life Insurance Policy, which would be held for the benefit of the minor children rather than of Mrs. Meridith, but that when the youngest of the children should become 21 years of age the policy would then be the sole property of defendant. Custody of the children was awarded jointly to the husband and wife with defendant agreeing to pay to plaintiff the sum of $100 per month for each child during any period when such child was in the physical custody of the plaintiff. Defendant further agreed to pay alimony to plaintiff for her support, consisting of $200 per month for one year and then $100 per month, or less, for the following year to the end that such payment for the second year, together with her own earnings, amounted to at least $300 a month, and after the second year $1.00 per year until plaintiff's death or remarriage. Defendant further agreed to pay $350 as attorney's fees to Mr. Dunford, as counsel for the wife.

The written stipulation further recited that it was agreed that defendant would withdraw his cross-complaint and plaintiff would amend her complaint to state a cause of action for divorce. At the same time—December 27, 1966—a first amended complaint for divorce was filed by plaintiff and the court signed an interlocutory decree awarding a divorce to plaintiff, together with the custody of the minor children pursuant to the hearing of December 15, 1966. Mrs. Meridith did not move for a new trial or appeal from the judgment.

We now come to the motion which plaintiff filed on May 23, 1967, and concerning which the present appeal is lodged. The motion of plaintiff through a new attorney was to set aside the interlocutory decree of divorce; it was accompanied by a

declaration of Mrs. Meridith in support of the motion, alleging that the decree was improperly secured and without the consent of the plaintiff. She stressed the fact that she had discovered that the attorneys participating in the first trial had stipulated that no reporter would be present at the trial; that before the hearing she had received two anonymous letters advising her not to have the case heard by Judge Maushart; that she had told her then attorney, Dunford, of the letters, and that she did not want that particular judge to hear her case, but that he did nothing to have Judge Maushart disqualified [it nowhere appears that she attempted to discharge her attorney prior to trial, even though he did not agree with her]; that at the time of the hearing she had not asked for a divorce, that the stipulation which constituted in fact a property settlement was unsigned by the parties, and that the interlocutory judgment of divorce and said two other documents were filed on the same date, December 27, 1966; that the judgment and the stipulation were procured through plaintiff's surprise and mistake, and that she did not agree to many of the essential items set forth in the written stipulation and in particular as follows: she objected to the awarding of the real estate brokerage business to defendant as his sole property; to the fact that the life insurance policy should be maintained for the benefit of the minor children and not in any respect for herself; that the amount of alimony was insufficient to take care of her; that she had been suffering from a blood disease and was under the care of Dr. Maloney at the time of the trial and needed additional money for medical bills; that the information of her illness was not presented before the court; that the written stipulation with regard to the property was signed by the attorneys only and was not seen or examined by her prior to the hearing; and that she did not authorize her attorney to sign the stipulation. The plaintiff requested that the court set aside the interlocutory decree of divorce and schedule the matter for retrial.

 Before proceeding with the motion, Mr. Petersen attempted to disqualify Judge Maushart under the provisions of section 170.6 of the Code of Civil Procedure. The attorney was sworn and stated under oath that

". . . I believe your Honor to be prejudiced against me to such an extent that my client, Mrs. Meridith, would not be able to have a fair hearing in this court before you and therefore on that basis I am asking your Honor to be disqualified under Section 170.6."

The trial judge denied the motion to disqualify him; he pointed out that he had heard the case and had decided it on its merits and that, at this stage, the filing of such attempted disqualification was not permissible. The court was right in this ruling. As stated by the trial judge, he had previously acted in the whole case without any prior attempt to disqualify him, and it would be improper at this time to grant the motion for disqualification.

In the leading case of *Jacobs* v. *Superior Court,* 53 Cal.2d 187, 191 [1 Cal.Rptr. 9, 347 P.2d 9], it is said: "If a disqualification were permitted under section 170.6 in matters which are continuations of a prior proceeding, it would mean that the judge who tried the case, and who is ordinarily in the best position to pass upon the questions involved, could by a mere general allegation of prejudice, and without any judicial determination of the facts, be disqualified from hearing such matters as motions for modification of a support order or an injunction, as well as motions for change of custody of children. Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, if confronted with an adverse judgment, allow them to disqualify him without presenting facts showing prejudice, in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially the same issues."

In *Stafford* v. *Russell,* 201 Cal.App.2d 719, 721 [20 Cal. Rptr. 112], it is said: "In a supplemental or continued hearing on matters involved in the original proceeding, an application under section 170.6 for disqualification of the same judge who heard the original proceeding is not proper or timely and is not permitted under the section." (See also: *McClenny* v. *Superior Court,* 60 Cal.2d 677, 680-681 [36 Cal. Rptr. 459, 388 P.2d 691]; *Ball* v. *City Council,* 252 Cal.App. 2d 136, 146 [60 Cal.Rptr. 139]; *Dennis* v. *Overholtzer,* 179 Cal.App.2d 110 [3 Cal.Rptr. 458]; *People* v. *Paramount Citrus Assn.,* 177 Cal.App.2d 505, 511-512 [2 Cal.Rptr. 216]; *Thompson* v. *Superior Court,* 206 Cal.App.2d 702 [23 Cal. Rptr. 841]; *People* v. *Keller,* 245 Cal.App.2d 711, 713 [54 Cal.Rptr. 154]; *Swartzman* v. *Superior Court,* 231 Cal.App.2d 195, 200 [41 Cal.Rptr. 721]; *Robinson* v. *Superior Court,* 186 Cal.App.2d 644, 649 [9 Cal.Rptr. 130]; *Michaels* v. *Superior Court,* 184 Cal.App.2d 820 [7 Cal.Rptr. 858].)

The suggestion by appellant that through some unspecified legal alchemy the motion for disqualification under section

170.6 of the Code of Civil Procedure should have become a motion for disqualification under section 170 of the Code of Civil Procedure finds no support in the record.

▇▇ After the attempt to disqualify Judge Maushart, Marie Helen Meridith testified that she did not fully understand or approve the orally stated stipulation with respect to the division of property between the spouses; that she had received two anonymous letters well before the trial warning her against trying the case before Judge Maushart and that she told her then attorney, Mr. Dunford, that she did not want that judge to try the case, but that Mr. Dunford did not file any disqualification affidavits and that he "apparently did nothing to have Judge Maushart disqualified, although he had tried to get another judge to hear the case." She objected to the fact that the stipulation relative to the division of the community property was signed only by the attorneys and not by the parties. She called attention to the fact that she had told Mr. Dunford that she was under the care of Dr. Patrick Maloney for a blood disease, and she maintained that the provision for her alimony did not sufficiently cover that contingency. Her basic complaint concerning the trial of the case was that she had not given her consent to many of the items contained in the stipulation, and that they were unfair to her.

A vitally different construction of what took place was stated by her former attorney, David G. Dunford, in his comprehensive testimony; he was called to the stand by C. Ray Robinson, attorney for the defendant. Mr. Dunford said he had worked for a number of months on the case, from the time Mrs. Meridith first consulted him about her divorce on the 25th day of June 1966, some six months prior to the hearing. Afterwards he and Mr. Robinson, representing the defendant, had several discussions relative particularly to a division of the community property. He stated that he was a graduate of the University of California at Berkeley, receiving his A. B. Degree in 1949, and that he obtained an LLB from the Harvard Law School in 1952. He has practiced law in California since February 1952, and, among other things, has represented the County of Stanislaus as its assistant county counsel for 11 years. He said that he and Mrs. Meridith had at least eight different conferences on the subject of settlement of the property rights, and he and Mr. Robinson also had conferences in the presence of Mrs. Meridith twice in Mr. Robinson's office. On the day of the hearing, Mrs. Meridith and he spent approximately one-half hour during recess, going over

each and every aspect of the stipulation that was eventually entered into. Mr. Dunford said further: ". . . the only subject of serious discussion was how long Ray [the defendant] would continue to pay her and how much." The attorneys, according to the witness, waived a court reporter so that there would be no permanent record of the testimony of the daughter of the defendant in support of her mother.

On cross-examination, Mr. Dunford testified as follows:

"Q. Were all of these items discussed with Mrs. Meridith in the 30 minutes you say you spent in the jury room with her?

"A. They were discussed in this sense: there were a number of items we had already agreed on. Ray was to get the business for whatever it was worth. The children were to have $100.00 a month support. There were a number of things that had already been discussed, such as the car, getting the car free and clear. This was already decided on. The only thing we had left to talk about when we came down here and we knew what we were going to talk about was how long Ray was to provide support for her and in what amount and we settled it."

The matter of disqualification of Judge Maushart was dealt with on cross-examination of Mr. Dunford as follows:

"Q. Now, was there any discussion between you and Mrs. Meridith regarding the disqualification of Judge Maushart?

"A. There certainly was.

"Q. When did this take place?

"A. At the time she received those anonymous letters.

"Q. You saw the anonymous letters?

"A. I saw one of them, handwritten one. I distinctly remember that one. I don't remember the typewritten one.

"Q. All right. How long was this prior to trial?

"A. I would say months.

"Q. Did you take any steps? Did you ask Judge Maushart to disqualify himself?

"A. No, I did not.

"Q. Did you take any steps to have him disqualified?

"A. I told Mrs. Meridith I had never filed an affidavit on a Judge in my life and I never intend to. I have practiced law in front of all and I would try to get Judge Fretz to hear it because obviously she was nervous about it.

"Q. Did you tell Mrs. Meridith that you couldn't do anything about it on the morning of trial when she asked about it? A. I did."

Thus, the testimony of Mr. Dunford, which was received by the court in this supplemental proceeding, constituted sufficient evidence to substantiate the viewpoint of the trial court that the preceding interlocutory decree should not be set aside and that the motion to retry the issues should not be granted. The objection to the offer in evidence in this court of the two anonymous letters relative to Judge Maushart is sustained.

The order denying the attempt to set aside the interlocutory decree of divorce is affirmed.

Stone, J., and Gargano, J., concurred.