[Civ. No. 22504. First Dist., Div. One. Jan. 11, 1966.]

PETER N. ANDREWS et al., Plaintiffs and Appellants, v. JOINT CLERKS PORT LABOR RELATIONS COMMITTEE, SAN FRANCISCO et al., Defendants and Respondents.

Howard B. Crittenden, Jr., for Plaintiffs and Appellants.

Richard Ernst, G. L. Munter, Jr., G. A. Laster, Gladstein, Andersen, Leonard & Sibbett, George R. Andersen and Norman Leonard for Defendants and Respondents.

SULLIVAN, P. J.—The fundamental question which we must decide in this case is whether the trial judge was disqualified to act because of a peremptory challenge directed against him pursuant to the provisions of Code of Civil Procedure section 170.6. As we explain *infra,* we have concluded that the instant proceeding in which disqualification was sought, although designated by a different number in the court below, was in reality a part and continuation of other proceedings pending therein in which the same trial judge had previously heard a matter involving a contested issue of law or fact and that the motion for his disqualification was therefore not timely made. Additionally, we find no error in his disposition of the proceedings below. We therefore affirm the order and judgment appealed from.

We set forth a chronology of the pertinent procedural events giving rise to the present controversy: On *March 26, 1962* plaintiffs and appellants in the instant action (No. 541755)[1] and other parties brought an action in the court below (No. 520151)[2] against defendants and respondents in the instant action and other parties[3] alleging a breach of a certain collective bargaining agreement and seeking the issu-

---

[1] In the instant action (No. 541755) plaintiffs (appellants herein) are 30 ship clerks employed in the Port of San Francisco and working under a collective bargaining agreement entered into between defendant Pacific Maritime Association (PMA) on behalf of employers in the maritime industry and defendant International Longshoremen's & Warehousemen's Union (ILWU), although as so-called nonregistered clerks they are not members of ILWU. PMA acts for all its members in matters involving employment of clerks and is the disbursing agent for them in making payment of compensation. Defendants (respondents herein), excepting those designated by fictitious names, are three unincorporated associations and a nonprofit corporation: Joint Clerks Port Labor Relations Committee, San Francisco (Committee), an unincorporated association; PMA, a nonprofit corporation; ILWU, an unincorporated association; Ship Clerks' Association, Local 34, ILWU (Local 34), an unincorporated association. Defendant Committee consists of employer representatives selected by PMA and employee representatives selected by Local 34.

[2] Respondents herein have caused the county clerk's files in action No. 520151 to be transmitted to this court specifying certain portions thereof as exhibits heretofore designated by them for inclusion in the record on appeal. (Cal. Rules of Court, rule 10(b).) It is not clear from the record how these were original *exhibits* in view of the nature of the proceedings below, unless it is meant that the county clerk's files were judicially noticed by the trial judge. In any event, at oral argument all parties stipulated that all of said files in action No. 520151 may be considered by this court.

[3] In the initial 1962 action (No. 520151) there are 35 individual plaintiffs, 30 of whom are plaintiffs in action No. 541755. Defendants,

ance of a writ of mandate, declaratory relief and damages. In essence, the plaintiffs in the 1962 action claimed that they had been arbitrarily discriminated against in connection with the employment, registration, selection, dispatching from hiring halls, and compensation (including pension and welfare benefits) of ship clerks in the Port of San Francisco.

On *February 19, 1963*, after various intervening pleadings and procedures not here material, defendants therein moved for a summary judgment ''on the ground that plaintiffs have failed to exhaust the grievance procedure provided by the collective bargaining contracts'' relied upon by them and, in the alternative, for a stay of said action ''on the ground that the issues in this action are subject to the grievance procedure under the governing collective bargaining contracts which include a provision for arbitration.''[4] On March 28, 1963, the Honorable Joseph Karesh signed and filed in action No. 520151 an order providing among other things ''That further proceedings in the present action are stayed pending submission of the issues in this action to the grievance arbitration procedure under the governing collective bargaining contract.''[5]

The file in action No. 520151 discloses a copy of a letter dated March 28, 1963 from plaintiffs' counsel, Mr. Crittenden,[6] to the arbitrator, Professor Kagel, questioning the existence of any arbitration provision in the collective bargaining agreement; suggesting without prejudice to such position that the arbitrator make his necessary determinations, includ-

---

except those designated by fictitious names, are 10 individuals and associations, including a nonprofit corporation, four of which are defendants in action No. 541755 (see fn. 1, *ante*).

[4]The defendants also moved for an order that the parties first proceed with the trial of certain special defenses.

[5]The order recites that at the hearing of the motion, counsel for the defendants orally represented to the court ''that the collective bargaining contract involved contains a detailed grievance procedure including arbitration before Professor Kagel of the University of California and that the *issues presented by the complaint* can be made a grievance and taken by plaintiffs through the grievance procedure to arbitration'' (italics added) and contains a finding that there is in fact such a provision. The order further directed ''That if plaintiffs fail to submit the issues in this action to the grievance procedure under the collective bargaining contracts by May 1, 1963 defendants may renew their Motion for Summary Judgment.''

[6]Also counsel for the plaintiffs in the instant action both below and on this appeal.

ing determinations as to whether there was a written contract for arbitration and whether he had jurisdiction in the matter; setting forth certain legal theories supporting the plaintiffs' position; and requesting that the arbitrator immediately set the matter for hearing. This letter also requested that, if there was an applicable provision therefor, there also be arbitration of alleged discrimination against the plaintiffs arising out of the fact that they had brought and were maintaining the pending action and were not union members.[7]

In the ensuing proceedings, as well as in the instant action, the parties denominated the issues tendered by the complaint in the original action (No. 520151) "Issue No. 1" and the subsequent claims of discrimination allegedly arising because of the commencement of said action "Issue No. 2."

On *March 6, 1964*, Professor Kagel rendered his opinion and decision as arbitrator which, while referring to Issue No. 1 and Issue No. 2, concluded that "The undersigned Arbitrator does have jurisdiction to hear and decide Issue No. 1. Andrews, et al shall be given the opportunity to present their case on estoppel and waiver."[8] However the record discloses that the arbitration was in process (see fn. 8, *ante*), that the arbitrator had merely made a decision on one aspect of the matter, that he had not disclaimed jurisdiction on Issue No. 2, and that in the course of the arbitration proceedings all parties agreed that Professor Kagel had jurisdiction to determine Issue No. 2.[9] Nevertheless on or about March 25, 1964, Mr. Crittenden notified the arbitrator by letter that "any consent for you to act as Arbitrator is terminated, particularly as to issues #2" and that he would apply "to the necessary Court for the naming of an impartial and neutral arbitrator."

---

[7]The letter in pertinent part stated: "On behalf of the plaintiffs in this Superior Court action . . . I am asking that if there are such provisions in the contract that there be an arbitration arising from the discrimination against these plaintiff non-union ship clerks *connected with* and *arising from their bringing and maintaining of this action* . . . This is a matter in which I am asking arbitration if there is such a provision and authority of yours to act and *it is not involved within the issues of the pending case.* . . ." (Italics added.)

[8]In his letter to the parties the arbitrator transmitted his "Award in the above case on Issue No. 1" and set a hearing "with reference to the estoppel and waiver case."

[9]A portion of the transcript of the proceedings reads as follows: "THE ARBITRATOR [Professor Kagel]: My understanding on Issue No. 2

On *March 26, 1964,* the plaintiffs in action No. 520151 moved for an order vacating the stay order of March 28, 1963, or in the alternative "if the Court desires arbitration to continue," for the naming of "an impartial and neutral arbitrator."

On the same day, March 26, 1964, plaintiffs commenced in the court below the instant action (No. 541755) now on appeal, by filing their "Complaint and Petition for Naming of Impartial and Neutral Arbitrator." We have noted *supra* the parties thereto and their relationship to the parties in the 1962 action (see fns. 1 and 3, *ante*). It is sufficient to say at this point that all plaintiffs and all defendants in the 1964 action were plaintiffs and defendants respectively in the 1962 action. Said complaint and petition, after describing the parties thereto and the collective bargaining agreement involved in substantially the same manner as they had been described in the complaint in the 1962 action, alleges in substance as follows: That there was a dispute between the plaintiffs on the one hand and the defendants on the other *"arising since and arising from* certain litigation pending in the above entitled Court, included in the action herewith and others, numbered 520151" (italics added); that the matter in dispute was Issue No. 2;[10] that the matters ordered to be arbitrated by Judge Karesh were those involved in the pending superior court action (No. 520151) and comprised Issue No. 1; that *Issue No. 2 was not involved in said action;* that Issue No. 1 is "wholly separated from and not connected with" Issue No. 2; that the arbitrator "has and does now refuse and neglect to hear the matters on the merits hereof"; and that the conduct of the arbitrator indicated he was not impartial. The complaint prays that the court appoint an impartial and neutral arbitrator "to arbitrate the said *issues #2 involved in this action"* (italics added); that the court enjoin any future proceedings in arbitration

is that all of the parties have conceded I have jurisdiction. Is that correct? MR. ANDERSEN [Attorney for Union defendants]: Yes, you have jurisdiction, yes. THE ARBITRATOR: All right, on Issue No. 2. . . . MR. ERNST [Attorney for the employer defendants]: Right. MR. CRITTENDEN [Attorney for plaintiffs]: As to Issue No. 2, there is no question of jurisdiction. . . . THE ARBITRATOR: Mr. Crittenden, the question of my jurisdiction to determine Issue No. 2 was settled last time. It has been reiterated again by the parties. MR. CRITTENDEN: All right."

[10]Identified by setting forth *in haec verba* that portion of the letter dated March 28, 1963, from Mr. Crittenden to Professor Kagel dealing with the issues denominated Issue No. 2. (See also fn. 7, *ante.*)

"involved in this action" by Professor Kagel;[11] and that the court supervise this arbitration of Issue No. 2.

On the filing of the complaint and petition in action No. 541755 plaintiffs obtained the issuance of an order to show cause, returnable in the court below on the same date, at the same time and in the same department of the superior court as designated by them for the hearing of the motion to name an impartial arbitrator, filed the same day in action No. 520151. Unlike the 1962 complaint, the 1964 complaint sought no writ of mandate, declaratory relief, damages or accounting. In essence, it had the same objective—removal of arbitrator—as the motion in the 1962 action had. Identical points and authorities were filed in support of both the complaint and the motion.

In respect to said complaint and petition the so-called Union defendants filed a demurrer asserting (1) that the complaint failed to state a cause of action and (2) that there was another action (i.e., No. 520151) pending. Defendants PMA and Committee filed a "Response (in Nature of Demurrer) to 'Complaint' and Order to Show Cause" alleging (1) that the use of a complaint and summons was an improper procedure under the provisions of the Code of Civil Procedure dealing with arbitration (§§ 1280-1294.2); (2) that no cause of action was stated since the complaint alleged no *written* agreement to arbitrate Issue No. 2 as provided by Code of Civil Procedure sections 1281, 1281.2 and 1281.6; (3) that Kagel could not be enjoined since he was not named as a party defendant; and (4) that "For the foregoing reasons" the complaint should be dismissed.

On *April 2, 1964,* and more than five days before the date of hearing, W. N. Heastan, one of the plaintiffs, filed in action No. 541755 an affidavit of prejudice under Code of Civil Procedure section 170.6 and a motion based thereon for the disqualification of Judge Karesh in the above entitled matter. On April 8, 1964, both the motion in the 1962 action and the order to show cause in the 1964 action came on for hearing before Judge Karesh in the law and motion department. Judge Karesh, who, as previously noted, had made the order of March 28, 1963, in action No. 520151 staying further proceedings therein pending the submission of the issues to arbitration, characterized action No. 520151 and action No.

---

[11] It is to be noted that the arbitrator Professor Kagel was not made a party defendant in the instant action.

541755 as involving "essentially the same parties, essentially the same case" and "essentially the same subject matter you are attempting by this complaint, which is a sham pleading." Relying upon *McClenny* v. *Superior Court* (1964) 60 Cal.2d 677 [36 Cal.Rptr. 459, 388 P.2d 691], the court below thereupon struck the affidavit of prejudice on the ground that the proceedings in action No. 541755 were in reality but a continuation of the 1962 action and that the affidavit therefore had been filed too late. The court thereupon proceeded to dispose of the 1964 matter on the merits.

On May 6, 1964, after making findings of fact and conclusions of law,[12] the court made and entered its "Order and Judgment" ordering (1) that the affidavit of prejudice be stricken; (2) that the demurrer of the Union defendants on the ground of another action pending on the same issues and between the same parties be sustained and that the general demurrer of said defendants be sustained without leave to amend; (3) that the motion of the employer defendants "to dismiss and deny the Complaint and Petition" be granted "without leave to amend and the order to show cause is hereby discharged and vacated"; and (4) that "upon the Court's own motion," the complaint and petition be stricken and dismissed as a sham pleading. This appeal from said order and judgment followed.

We first consider plaintiffs' contention that Judge Karesh was disqualified from hearing the instant matter and that all action taken by him was void. Section 170.6 of the Code of Civil Procedure provides that no judge of a trial court shall try any action or special proceeding or hear any matter therein involving a contested issue of law or fact when it is established by the timely making of a motion for his disquali-

---

[12]The findings of fact and conclusions of law were made after considering the pleadings, records and files in both the 1962 and the 1964 actions, the arguments of counsel and the memoranda and affidavits of the parties. The court after having "found" that the various procedural events set forth by us *supra* had occurred, found that neither the arbitrator nor any of the defendants had caused unreasonable delay in the arbitration procedure had pursuant to the order of March 28, 1963; that substantially all the delay therein had been caused by counsel for plaintiffs; that the arbitrator was not biased or prejudiced; that all of the relief sought by the complaint and petition in action No. 541755 could have been sought by plaintiffs' motion to vacate filed in action No. 520151; and that the complaint in action No. 541755 was a sham pleading and "was filed for the sole purpose of providing an ostensible basis" for the peremptory disqualification of the judge under Code Civ. Proc., § 170.6.

fication supported by affidavit or oral statement under oath that such judge is prejudiced against any party or attorney. ■ Prejudice may be established by an affidavit in general and conclusionary terms in substantially the form provided by statute (§ 170.6, subd. (5)) and upon the motion and affidavit being duly made and presented, disqualification becomes effective automatically "without any further act or proof" and "the trial of the cause or the hearing of the matter shall be assigned or transferred to another judge. . . ." (§ 170.6, subd. (3).) ■ Where there has been sufficient compliance with section 170.6 and the motion therein provided for has been timely made and supported by a sufficient affidavit, the judge against whom the peremptory challenge has been directed is without jurisdiction to proceed with the trial or hearing (*Lewis* v. *Linn* (1962) 209 Cal.App. 2d 394, 399 [26 Cal.Rptr. 6]) and if he does so, all of his subsequent actions thereon, including all orders and judgments entered by him, are null and void. (*McCauley* v. *Superior Court* (1961) 190 Cal.App.2d 562, 565 [12 Cal. Rptr. 119]; *Estate of Cuneo* (1963) 214 Cal.App.2d 381, 384 [29 Cal.Rptr. 497]; see *Briggs* v. *Superior Court* (1932) 215 Cal. 336, 341-342 [10 P.2d 1003]; *Turkington* v. *Municipal Court* (1948) 85 Cal.App.2d 631, 638 [193 P.2d 795].)

■ Excepting those situations involving the trial of a cause appearing on a master calendar, where the judge assigned or scheduled to try the cause or hear the matter is known at least 10 days before the trial or hearing date, the motion must be made at least five days before that date and if directed to a hearing other than the trial of a cause "must be made not later than the commencement of the hearing." (§ 170.6, subd. (2).) ■ The judge against whom the affidavit is filed may determine whether it is timely since he may properly try or hear the matter if it is not. (*Lewis* v. *Linn, supra,* 209 Cal.App.2d 394, 399-400.) ■ However, since the motion for disqualification under section 170.6 "must be made before the trial has commenced, it cannot be entertained as to subsequent hearings which are a part or a continuation of the original proceedings." (*Jacobs* v. *Superior Court* (1959) 53 Cal.2d 187, 190 [347 P.2d 9]; *McClenny* v. *Superior Court, supra,* 60 Cal.2d 677, 680-681; *People* v. *Paramount Citrus Assn.* (1960) 177 Cal.App.2d 505, 511-512 [2 Cal.Rptr. 216]; *Dennis* v. *Overholtzer* (1960) 179 Cal.App.2d 110, 111-112 [3 Cal.Rptr. 458]; *Stafford* v. *Russell* (1962) 201 Cal.App.2d 719, 721 [20 Cal.Rptr. 112], cert. denied 372

U.S. 946 [83 S.Ct. 940, 9 L.Ed.2d 971]; *Thompson* v. *Superior Court* (1962) 206 Cal.App.2d 702, 706 [23 Cal. Rptr. 841]; *People* v. *Rojas* (1963) 216 Cal.App.2d 819, 823-824 [31 Cal.Rptr. 417]; *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 699 [32 Cal.Rptr. 288]; *Mayr* v. *Superior Court* (1964) 228 Cal.App.2d 60, 63 [39 Cal.Rptr. 240].) ▮ It also comes too late when filed after the judge against whom it is directed has heard and decided preliminary matters involving contested issues of law or fact. (*McClenny* v. *Superior Court, supra,* at p. 683; *Thompson* v. *Superior Court, supra,* at p. 707.)

In *McClenny, supra,* upon which the trial court relied in the instant case, after reviewing the basic rules set forth in *Jacobs* and the cases following it[13] for determining whether a particular proceeding is a continuation of a prior action or a separate and independent action, the Supreme Court declared: "Thus the holding in *Jacobs* v. *Superior Court* has been frequently applied, restated, and amplified. The gravamen of the *Jacobs* decision establishes that a proceeding is a continuation of the original action out of which it arises if it involves 'substantially the same issues' as the original action. The most recent case interpreting the section, *Oak Grove School Dist.* v. *City Title Ins. Co., supra,* 217 Cal.App.2d 678, 699, cogently restated the rule and held that the presentation in the supplementary proceeding of 'matters *necessarily relevant and material to the issues involved in the* [original] *action*' stamped the supplementary proceeding as a continuation of the original action. [Fn. omitted.]" (60 Cal.2d at p. 684.)

▮ It is clear that the hearing on the order to show cause, demurrer and response in action No. 541755 was in reality a part or continuation of the proceedings previously

---

[13]The court noted that such cases fell into two general groups: (a) those in which the section 170.6 motion was made *prior* to *supplementary* proceedings and (b) those where it was made *after* preliminary contested proceedings. Illustrative of the first group are *Jacobs* (proceedings for modification of a custody order supplementary to consolidated custody and guardianship proceedings), *Oak Grove School Dist.* (proceedings to recover costs under Code Civ. Proc., § 1255a, after abandonment of condemnation action supplementary to trial and entry of judgment), and *McClenny* itself (contempt proceedings supplementary to action for divorce). Illustrative of the second group is *Michaels* v. *Superior Court* (1960) 184 Cal.App.2d 820 [7 Cal.Rptr. 858] (proceeding on special appearance attacking jurisdiction of the court, preliminary to proceeding on order to show cause in re contempt).

had before Judge Karesh in action No. 520151 in March 1963. The purpose of the order to show cause and of the "complaint and petition" on which it was grounded was to secure the removal of Professor Kagel as arbitrator, halt the arbitration in progress before him, and proceed before a new arbitrator under court supervision. Thus, simply stated, the objective of action No. 541755 was to obtain a modification of the March 1963 order still in effect in action No. 520151. Indeed, by seeking a continuance of the arbitration, albeit under a new arbitrator, the 1964 proceedings are demonstrably a *continuation* of, and *ancillary* to, those previously had.

There is also a substantial similarity between the issues raised by action No. 541755 and those previously raised before Judge Karesh in action No. 520151. At the March 1963 hearing, the principal question raised before Judge Karesh was whether the issues tendered by the complaint were subject to grievance procedure, including arbitration, provided for in the very collective bargaining agreement upon which the plaintiffs therein based their alleged causes of action. Judge Karesh decided that they were subject to such grievance procedure which it was incumbent upon said plaintiffs to exhaust and therefore stayed the proceedings in action No. 520151 "pending submission of the issues in this action to the grievance arbitration procedure. . . ." Plaintiffs herein, all of whom were plaintiffs in action No. 520151, and their present counsel who was counsel in said action, entered upon such grievance procedure, voluntarily incorporated within it the so-called related Issue No. 2 and expressly agreed that the arbitrator had jurisdiction to determine such issue. (See fn. 9, *ante.*) Thus, any question as to whether Issue No. 2 was properly within the arena of dispute was laid at rest when plaintiffs' counsel made such issue one of the grievances. The arbitrator himself recognized that two issues were presented to him. The net result of all this was that the original action was stayed pending the consideration of a number of grievances conveniently catalogued by the parties under two issues.

The same plaintiffs now asserting in the instant action the existence of a dispute as to only *one* of such issues (Issue No. 2) seek to have Professor Kagel removed as to such issue and to have the particular grievances embraced therein presented to another arbitrator. It is clear that the question whether Professor Kagel should be removed as to Issue No. 2 is sub-

stantially the same as to whether he should be removed at all, since he was engaged in resolving all claimed grievances subject to the procedure of the contract. He was arbitrating grievances, not a lawsuit. Furthermore, despite plaintiffs' assertions to the contrary, it is clear that the alleged discrimination against plaintiffs because they brought the original action is related to alleged discrimination set forth in said action since both constituted discrimination in respect to the employment of plaintiffs. The question presented by the proceedings in action No. 541755 as to whether a new arbitrator should be named as to Issue No. 2 was inextricably bound up with the previous determination of the court in action No. 520151 that arbitration should proceed before Professor Kagel pursuant to the provisions of the collective bargaining agreement. (See fn. 5, *ante.*) Hence, the question raised by the 1964 petition was necessarily relevant and material to the previous directions for arbitration made by the court as part of its stay order. As such, it establishes that the later proceeding is in fact a continuation of the original one.

In an attempt to show that it is not a continuation, plaintiffs liken the grievances embraced with Issue No. 2 to tortious actions engaged in by these defendants because plaintiffs sought to enforce the collective bargaining agreement in question. The argument is made that the ''tort remedy'' is not included within the ''contract action'' ordered to be arbitrated and that ''this tortious act of reprisal . . . is a different action and proceeding. . . .'' The simple answer to all of this is that action No. 541755 neither presented any claim nor sought any recovery for a tort. Seeking none of the relief prayed for in the original action, its sole objective, as we have already pointed out, was the removal of the arbitrator.

Furthermore, we find telling and convincing evidence that the 1964 proceedings were but a continuation of those previously before Judge Karesh in the separate proceedings simultaneously initiated by the plaintiffs and their common counsel in each action and brought on for hearing before Judge Karesh on April 8, 1964. In action No. 520151, as previously noted, the plaintiffs moved to vacate Judge Karesh's previous stay order or in the alternative for the naming of a new arbitrator; in action No. 541755, as just discussed, these plaintiffs, who were also plaintiffs in the original action, moved through order to show cause procedure

for the naming of a new arbitrator in respect to Issue No. 2. In each proceeding the basic issue is identical, namely, the removal of Professor Kagel. In each, the attack against him is the same and the factors relevant to his bias and prejudice in respect to the original action are "necessarily relevant and material" to similar claims presented in action No. 541755. In each, identical points and authorities were filed in support of the respective motions. It is obvious to us, as it was to the trial judge, that these plaintiffs and their counsel, "split" their motion to modify the previous order of the court and by a "spin-off" device attempted to fashion a "new and independent action" in which to assert a peremptory challenge against the judge. It is manifest that if they had presented only the one motion in the original action, they could not have invoked section 170.6 since Judge Karesh had already heard a contested issue of law or fact therein. (*Thompson* v. *Superior Court, supra,* 206 Cal.App.2d 702, 706.) ▮ The 1964 proceedings being merely a continuation of the 1962 proceedings, plaintiffs should not be permitted to make them independent through the vehicle of a newly filed and separately numbered action. If this were countenanced, a party could circumvent the statute by the simple expedient of having a supplementary or ancillary proceeding filed under a new number.[14]

Pertinent here is the following language from *Jacobs*: "If a disqualification were permitted under section 170.6 in matters which are *continuations of a prior proceeding,* it would mean that the judge who tried the case, and who is ordinarily in the *best position to pass upon the questions* involved, could by a mere general allegation of prejudice, and without any judicial determination of the facts, be disqualified from hearing such matters as *motions for modification* of a support order or an injunction, as well as motions for change of custody of children. Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, if confronted with an adverse

---

[14]The mere fact that proceedings are given different county clerk's file numbers should not be controlling. Defendants point out to us that in *Jacobs, supra* (where the later proceedings for modification of a custody order were held to be supplementary to and a continuation of original custody and guardianship proceedings), the original proceedings were designated No. HC 50211 and the subsequent supplemental petition for appointment of guardian was designated No. SMP 8162. (See former opinion of District Court of Appeal, *Jacobs* v. *Superior Court* (Cal.App. 1959) 342 P.2d 340, 343-344.)

judgment, allow them to disqualify him without presenting facts showing prejudice, in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially *the same issues."* (Italics added.) (53 Cal.2d at p. 191.) ▮ Accordingly, in somewhat the same way as the court did in *McClenny, supra* (60 Cal.2d 677, 684-685), we observe that in the instant controversy Judge Karesh, who had heard the original proceeding, is in the best position to pass upon matters which are continuations of it and to hear motions relating thereto which seek a modification of his previous order.

*Spector* v. *Superior Court* (1961) 55 Cal.2d 839 [13 Cal. Rptr. 189, 361 P.2d 909], on which plaintiffs rely, is distinguishable from the problem now confronting us. There, petitioner, a director of a corporation, filed a complaint on behalf of the corporation against four defendants, also directors, charging breach of trust. Subsequently the defendant directors filed a petition for dissolution of the corporation and at the same time a motion to vacate a preliminary injunction issued against them in the first action. Eventually there came on for hearing before the same judge petitioner's motion for an order modifying the preliminary injunction in the first action to restrain defendants from dissolving the corporation and in the second action the defendants' order to show cause why the corporation should not be dissolved. Although this was the first court hearing in the second action, the judge refused to disqualify himself upon the filing of an affidavit under section 170.6, ordered a dissolution and appointed a receiver. The court issued a writ of mandate holding that the judge should have disqualified himself. As noted above, the proceedings sought different relief and were commenced by different parties. The court does not seem to have considered that the second proceeding was a continuation of the first although it observed that "It would appear that the two actions here involved present essentially the same, or overlapping, issues and therefore should be consolidated and disposed of as a single proceeding." (P. 844.) We find no basic conflict between *Spector* and the later holding in *McClenny,* nor do plaintiffs point out any.

▮ We conclude that, since the proceedings in action No. 541755 were a continuation of those previously heard by Judge Karesh, the motion for his disqualification came too late and the affidavit of prejudice was properly stricken.

We now turn to consider whether the court committed error in its final disposition of the matter. It is to be noted that the "Order and Judgment" from which this appeal has been taken concentrates a barrage of orders and directions upon the second action with crushing effect. It is not necessary to arrange these somewhat overlapping and superfluous provisions in a tidy analysis. Plaintiffs complain that the court sustained the demurrers without leave to amend after limiting argument; struck the complaint as sham on its own motion; and, without taking evidence, made findings of fact and entered judgment as if there had been a trial on the merits. We need not consider plaintiffs' attack on the findings since we have concluded that the court properly sustained the demurrers to the complaint without leave to amend.

 "In the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. [Citations.]" (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]; see *Temescal Water Co.* v. *Department of Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1]; *MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36]; *Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 743 [29 Cal.Rptr. 201]; 2 Witkin, Cal. Procedure (1954) pp. 1496-1497.) But such action is not an abuse of discretion when it is clear that an amendment would not cure the defect in the complaint (*Lemoge Electric* v. *County of San Mateo, supra; Byrne* v. *Harvey* (1962) 211 Cal.App.2d 92, 118 [27 Cal.Rptr. 110]; *Schultz* v. *Steinberg* (1960) 182 Cal.App.2d 134, 140-141 [5 Cal.Rptr. 890]) or that a sufficient amendment would state a wholly different cause of action. (*Cyr* v. *White* (1947) 83 Cal.App.2d 22, 31 [187 P.2d 834]; *Pagett* v. *Indemnity Ins. Co.* (1942) 54 Cal.App.2d 646, 649 [129 P.2d 700]; 2 Witkin, *op. cit.*, pp. 1498-1499.)

 The "Complaint and Petition" filed in action No. 541755 and the order to show cause issued therein sought the removal of the arbitrator, and the naming of a new arbitrator "as provided by C.C.P. 1281 et seq." Thus, in effect, they sought a modification of the order previously entered in action No. 520151. Such relief under the California arbitra-

tion statutes should have been sought in the original action in which the proceedings had been stayed until the arbitration was had "or until such earlier time as the court specifies." (Code Civ. Proc., § 1281.4 2d par.) Indeed, as we have pointed out, this is precisely what the plaintiffs did do, except that they attempted to "split" their application for relief so as to bring into existence an allegedly new proceeding. ▆▆▆ Even if the complaint and petition were considered as confined to seeking the above relief under the arbitration statutes and the order and judgment herein appealed from were construed as merely one denying the removal of an arbitrator, plaintiffs would not properly be before this court, since such an order is not appealable. (Code Civ. Proc., § 1294; *Steelform Contracting Co.* v. *Baldwin Contracting Co.* (1962) 209 Cal.App.2d 177, 178 [25 Cal.Rptr. 916].)

▆▆▆ These considerations to one side, it is beyond question that the complaint and petition in action No. 541755 states no actionable claim. It is, as we have explained, merely a continuation of the original proceedings and appears to have been utilized as a vehicle to "shop" for another judge. It seeks nothing more than the removal of the arbitrator which should have been and was being sought in the original action, and plaintiffs herein have made no attempt either in their briefs or at oral argument to show how the pleading can, with reasonable possibility, be amended to cure its present defects. This is not surprising since it is quite apparent that plaintiffs never intended to seek any other relief. In any event, they have failed to assume the burden resting on them to establish an abuse of discretion on the part of the trial court in not granting leave to amend. (*Legg* v. *United Benefit Life Ins. Co.* (1960) 182 Cal.App.2d 573, 581 [6 Cal. Rptr. 73].) However, plaintiffs suffer no real disadvantage since apparently the grievance procedure and arbitration is proceeding under the supervision of the court in action No. 520151 in which they are all parties plaintiff.

Furthermore, we believe that the court which had before it all of the files in action No. 520151 was warranted in concluding that the limited relief sought in the later proceedings could be sought in the original case and that the second complaint was a sham which it had the inherent right to strike and dismiss on its own motion. ▆▆▆ "A court has inherent power by summary means to prevent an abuse of its

302

processes and peremptorily to dispose of causes of action and defenses that are sham, frivolous or wholly vexatious.'' (*Estate of King* (1953) 121 Cal.App.2d 765, 774 [264 P.2d 586]; see also *Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678, 682 [209 P.2d 825].)

The order and judgment appealed from is affirmed.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied February 2, 1966, and appellants' petition for a hearing by the Supreme Court was denied March 9, 1966.