[Nos. F011558, F011559. Fifth Dist. Mar. 6, 1989.]

CITY OF HANFORD et al., Petitioners, v.
THE SUPERIOR COURT OF KINGS COUNTY, Respondent;
GWF POWER SYSTEMS, INC., Real Party in Interest.

582

COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, Marshall C. Whitney, Motschiedler, Michaelides & Wishon, James A. McKelvey, Shute, Mihaly & Weinberger, E. Clement Shute, Jr., Rachel B. Hooper, Winifred A. Berman, Remy & Thomas, Michael H. Remy, James G. Moose and Sharon E. Duggan for Petitioners.

No appearance for Respondent.

Latham & Watkins, Christopher W. Garrett, Timothy C. Stutler and Philip G. Evans for Real Party in Interest.

OPINION

THE COURT.*—

STATEMENT OF THE CASE

Petitioners City of Hanford, Hanford City Council, Hanford Planning and Building Departments, Hanford City Planning Director James Beath and the individual city council members (City or Petitioners) seek a writ of

---

*Before Franson, P. J., Stone (W. A.), J., Brown (G. A.), J.†

---

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

prohibition or mandamus directing respondent Kings County Superior Court to vacate (1) its order granting real party in interest GWF Power Systems Company, Inc. (GWF), leave to file a cross-complaint and all temporary restraining orders (TRO) issued pursuant to the cross-complaint and (2) its order denying Petitioners' motion to disqualify Judge Julius Leetham pursuant to Code of Civil Procedure section 170.6 from hearing the cross-complaint or an identical separate lawsuit.[1]

The issues are: (1) whether a party can file a cross-complaint after judgment has been entered on the underlying complaint but before the case is finally determined on appeal, and (2) whether GWF's suit was merely a continuation of an earlier action challenging the cogeneration power project such that Petitioners' section 170.6 motion was untimely.

We conclude a peremptory writ of mandate should issue. The trial court abused its discretion in permitting the cross-complaint to be filed. GWF's cross-complaint cannot be filed after judgment has been entered in the trial court on the underlying complaint. The court also abused its discretion by denying Petitioners' motion to disqualify since the motion was timely under section 170.6.

STATEMENT OF FACTS

In 1986, as required by the City's zoning ordinance, GWF applied for a site plan review approval from the Hanford City Council (City Council) to construct a coal-fueled cogeneration power plant in Hanford. The city planning department reviewed the project and completed an Environmental Impact Report (EIR). On March 21, 1988, the City Council approved the project as not having a significant effect on the environment.

On April 20, 1988, the Kings County Farm Bureau (case No. 45936), the Kings County Committee for a Healthy Environment and others (case No. 45937) and the Citizens for a Healthy Environment (case No. 45939) filed separate actions against the City challenging various aspects of the project's approval and seeking an injunction against GWF's construction of the project. GWF was named as the real party in interest. The lawsuits alleged that approval of the project violated the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq.; the state planning and zoning laws, Government Code section 65000 et seq.; and the Hanford Zoning Ordinance.

The Kings County Superior Court judges disqualified themselves from the cases, and the Judicial Council appointed retired Superior Court Judge Julius Leetham to hear the actions. The cases were consolidated for trial

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

and heard on October 31, 1988. On November 9, 1988, Judge Leetham issued a minute order ruling in favor of the City and GWF. The environmental groups appealed the decision in December 1988 and January 1989.

On November 11, 1988, the City Council met to decide whether to reconsider its original approval of the project. When legal counsel advised the members it was illegal to reconsider the GWF project approval, a council member directed the City staff to prepare a temporary moratorium on emissions from coal-burning industries within City limits.

On December 5, 1988, judgment was entered in the consolidated actions for GWF and the City. The following day, the City Council adopted a moratorium ordinance prohibiting the issuance of permits for coal-fueled industrial plants based on "serious concerns regarding the potential harm which may befall the community, its economy and the environment, if coal fueled industrial facilities are allowed to locate and operate within this city."

On December 7, 1988, GWF applied for leave to file a cross-complaint challenging the legality of the moratorium and seeking damages for the alleged "taking" of their right to build the project. In addition, GWF requested a TRO barring enforcement of the moratorium ordinance. GWF also filed a separate "mirror" action which alleged the same causes of action and sought the same relief as that sought in the cross-complaint (case No. 47347).

Despite Petitioners' opposition, Judge Leetham permitted GWF to file the cross-complaint and issued a TRO enjoining enforcement of the moratorium ordinance. After associating new counsel, the City filed section 170.6 motions to disqualify Judge Leetham from hearing the cross-complaint and the new action.

On January 3, 1989, Judge Leetham heard the section 170.6 motions and denied them as untimely. He viewed the cross-complaint and the new action as a continuation of the proceedings originated in the environmental groups' lawsuits. He also reconfirmed his decision to allow GWF to file the cross-complaint. Counsel for the City and GWF agreed to a new TRO upon the posting of a $100,000 bond by GWF.

City filed two petitions for writ of prohibition and mandate with this court requesting peremptory relief. One petition challenged the denial of the disqualification motion in the new action (No. F011558) and the other addressed the order granting GWF leave to file its cross-complaint and denying Petitioners' motion to disqualify made in the original consolidated proceedings (No. F011559). GWF filed "Preliminary Opposition" to the

petitions after receiving notice pursuant to *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].[2]

### DISCUSSION

#### *Propriety of Writ Relief*

■ Petitioners contend the court had no discretion to permit GWF to file its cross-complaint because judgment had been entered in the underlying case. An order permitting the filing of a cross-complaint is ordinarily within the discretion of the trial court and is a nonappealable order. (*Gudel* v. *Ellis* (1962) 200 Cal.App.2d 849, 859 [19 Cal.Rptr. 751].) Mandamus is an appropriate remedy to obtain relief from a nonappealable order. And in unusual circumstances, a writ of mandate may issue where the court exercised its discretion and that discretion reasonably could be exercised in only one way. (*Tyco Industries, Inc.* v. *Superior Court* (1985) 164 Cal.App.3d 148, 153-154 [211 Cal.Rptr. 540].) ■ Moreover, rulings concerning the peremptory challenge of judges pursuant to section 170.6 are also subject to writ review. (*Keating* v. *Superior Court* (1955) 45 Cal.2d 440, 443 [289 P.2d 209].) Accordingly, writ review is appropriate in this case.

#### ■ *Leave to File the Cross-complaint*

1. *A party cannot file a cross-complaint after judgment has been entered on the underlying complaint in the trial court.*

Section 428.50 governs when a cross-complaint may be filed. Resolution of Petitioners' novel issues turns on interpretation of the final phrase of that section: "(a) A party shall file a cross-complaint against any of the parties who filed the complaint or cross-complaint against him or her before or at the same time as the answer to the complaint or cross-complaint.

"(b) Any other cross-complaint may be filed at any time before the court has set a date for trial.

"(c) A party shall obtain leave of court to file any cross-complaint except one filed within the time specified in subdivision (a) or (b). Leave may be granted in the interest of justice *at any time during the course of the action.*" (Italics added.)

Subdivision (a) addresses compulsory cross-complaints, those related to the subject matter of the underlying complaint which exist at the time of

---

[2]The request for briefing order was sent out for case No. F011559 only. However, GWF correctly assumed the court also wanted preliminary opposition to be filed in case No. F011558 and filed a combined brief addressing both cases.

service of the answer to the complaint on the particular plaintiff. Such claims must be raised by cross-complaint. If the claim has not been pleaded by the time the case goes to trial, judgment in the underlying action will bar later recovery by the party on the related claim. Once judgment is entered, the party cannot assert his or her unpleaded claim in a separate lawsuit. (§ 426.30; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (1988) § 6:289, p. 6-49.11.) Since GWF's purported cross-complaint is based on claims which did not exist until after judgment was entered on the underlying complaint, its cross-complaint is not governed by subdivision (a).

Subdivision (b) addresses permissive cross-complaints, those claims which are not related to the complaint which a defendant may assert against a plaintiff, and those claims against parties other than the plaintiff which a party may assert under section 428.10. Such cross-complaints can be filed without leave of the court at any time before the court has set a date for trial. GWF's cross-complaint was not filed before the trial date was set so it did not fall within subdivision (b).

Subdivision (c) addresses all other cross-complaints and provides that they can only be filed with leave of court which may be granted "in the interest of justice at any time during the course of the action." (§ 428.50, subd. (c).)

Petitioners contend the statutory language "any time during the course of the action" means from commencement of the action until judgment is entered. ■■ ■■ GWF submits, under section 1049,[3] the language means until the action is finally determined upon appeal or until the time for appeal has passed. Petitioners have the better argument. We conclude "during the course of the action" should not be construed to permit the filing of a cross-complaint after final judgment has been entered on the underlying complaint.

First, permitting leave to file a cross-complaint after judgment has been entered on the complaint does not further the purpose for cross-complaints. ■■ A cross-complaint allows a party against whom relief is sought (either a defendant or, as here, a real party in interest who is the true adverse party—cf. *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 189-190 [137 Cal.Rptr. 460, 561 P.2d 1148]) to assert claims for affirmative relief. The reason for allowing cross-complaints is to have a complete determination of a controversy among the parties in one action, thus avoiding circuity of action and duplication of time and effort. (*Currie Medical Specialties, Inc.*

---

[3] Section 1049 provides: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

v. *Bowen* (1982) 136 Cal.App.3d 774, 777 [186 Cal.Rptr. 543]; *Sattinger* v. *Newbauer* (1954) 123 Cal.App.2d 365, 369 [266 P.2d 586].) ▮▮▮ While it makes sense to join multiple causes of action at the outset in order to permit efficient resolution of a controversy, it makes no sense to add new causes of action to a controversy which has been resolved and the result of which cannot be altered by any issue raised in the new pleading.

Second, a judgment is the final determination in the trial court of the rights of the parties in an action or proceeding. (§ 577.) Thus, entry of judgment on the original complaints was a final resolution in the trial court of the issues therein between the environmental groups, the City and GWF. ▮▮ As a general rule, there is only one final judgment in an action, one which finally determines the rights of the parties in relation to the matter in controversy. A cross-complaint is not considered sufficiently independent to allow a separate final judgment to be entered upon it. However, where the cross-complaint seeks separate and independent relief by or against different parties, there can be a final judgment on the complaint and another on the cross-complaint. (*Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 118 [199 P.2d 668]; *DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 431-435 [160 Cal.Rptr. 899].)

▮▮▮ Under the above authority, GWF's cross-complaint, which does not assert claims against the environmental groups, may be considered sufficiently independent of the underlying complaint to avoid the one final judgment rule. However, since the claims are independent and did not ripen until judgment was entered, no purpose is served by injecting them into the underlying proceeding. GWF's claims are best treated as a separate action.

Finally, allowing a party to assert cross-complaints while a case is pending on appeal, could create chaos with the appellate process. ▮▮ The purpose of the rule depriving the trial court of jurisdiction pending appeal in civil actions is to protect the jurisdiction of the appellate court. The rule prevents the trial court from rendering the appeal futile by changing the judgment into something different from the judgment appealed. (*In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 381 [205 Cal.Rptr. 880].) ▮▮▮ If, as GWF claims, the cross-complaint shares identity of issues with the complaint, further litigation on those issues is necessary to resolve the controversy and the entered judgment is, in effect, interlocutory and nonappealable. A cross-complainant should not be permitted to circumvent the appellate rights of other parties by injecting additional claims into the lawsuit while the case is pending on appeal.

No purpose is served by permitting GWF to file a cross-complaint after judgment has been entered on the underlying complaint. GWF is not prejudiced by the holding. Its claims are not precluded but merely are denomi-

nated what they are—a new action.[4] Accordingly, the court abused its discretion in permitting GWF to file the cross-complaint after judgment was entered on the underlying complaint. Petitioners' section 170.6 motion filed in response to the cross-complaint is rendered moot.

*Section 170.6 Motion*

2. *GWF's new action was not a continuation of the earlier action challenging the cogeneration project, and therefore Petitioners' section 170.6 motion was timely.*

A party can disqualify a judge by filing a peremptory challenge in any hearing involving a "contested issue of law or fact." (§ 170.6, subd. (1).) The party need only file an affidavit stating that the judge before whom the action is pending is prejudiced against him or his interest such that he cannot have a fair and impartial trial or hearing. (§ 170.6, subd. (2).) ▪ If the affidavit is sufficient and timely, disqualification is mandatory, and the judge against whom the challenge is directed is without jurisdiction to proceed and, if he does so, all of his subsequent actions are void. (*Andrews* v. *Joint Clerks etc. Committee* (1966) 239 Cal.App.2d 285, 294 [48 Cal.Rptr. 646].)

A disqualification motion is timely if filed at least five days before the date set for trial or hearing where the judge is known at least ten days before that date. (§ 170.6, subd. (2).) ▪ Further, because the motion must be made before trial, "it cannot be entertained as to subsequent hearings which are a part or a continuation of the original proceedings." (*Jacobs* v. *Superior Court* (1959) 53 Cal.2d 187, 190 [1 Cal.Rptr. 9, 347 P.2d 9].) ▪ At the hearing below, GWF did not challenge the motion as untimely under the five-day rule; rather it argued, and the court agreed, that the motion was untimely because the new action was merely a continuation of the original proceedings initiated by the environmental groups.

▪ A subsequent proceeding is a continuation of an earlier action rather than a separate and independent action if it involves " 'substantially the same issues' " and " 'matters necessarily relevant and material to the issues involved in the [original] action.' " (*McClenny* v. *Superior Court* (1964) 60 Cal.2d 677, 684 [36 Cal.Rptr. 459, 388 P.2d 691].)

---

[4] Apparently, GWF filed the cross-complaint to have immediate access to the court to procure a prompt TRO barring enforcement of the moratorium. GWF assumed the Kings County Superior Court judges would disqualify themselves from a new action as they had from the earlier cases. However, GWF also recognized that filing a cross-complaint after judgment was entered in the case was "intuitively troubling" and protected its interests by filing a separate action setting forth the same causes of action.

██ The continued proceeding rule is premised on the belief that if disqualification were permitted in subsequent proceedings, the original judge, ordinarily in the best position to pass upon questions involved, would be disqualified from hearing such matters thus allowing litigants to gamble on a favorable decision from one judge and, if unfavorable, to seek another judge's ruling on substantially the same issues. (*Jacobs* v. *Superior Court, supra,* 53 Cal.2d at p. 191.)

The *Jacobs* rule has been applied in various kinds of cases: *Pappa* v. *Superior Court* (1960) 54 Cal.2d 350, 353 [5 Cal.Rptr. 703, 353 P.2d 311] (retrial after mistrial in a criminal case was not a separate action for purposes of § 170.6); *People* v. *Paramount Citrus Assn.* (1960) 177 Cal.App.2d 505, 511-512 [2 Cal.Rptr. 216] (§ 170.6 challenge untimely where case remanded with order to take additional evidence in conformance with appellate opinion. The new judgment to be entered would be based on evidence taken in the original trial and the supplemental evidence. If the original judge did not hear the supplemental proceedings, there would have to be a trial de novo, for one judge without consent or waiver cannot decide a case on evidence taken before another judge); *People* v. *Rojas* (1963) 216 Cal.App.2d 819 [31 Cal.Rptr. 417] (hearing to modify or revoke probation was a continuation of the original guilt proceedings); *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 699-700 [32 Cal.Rptr. 288] (motion to tax costs and disbursements after district abandoned eminent domain proceeding was continuation of earlier action. Party claiming costs and disbursements must show that the items charged were for matters "necessarily relevant and material to the issues involved in the eminent domain action"); *McClenny* v. *Superior Court, supra,* 60 Cal.2d 677 (issues involved in prior proceeding—alimony, receivership, custody and support of children—were similar to those involved in subsequent contempt proceeding for violations of earlier orders, and prior judge was in best position to pass on them); *Yokley* v. *Superior Court* (1980) 108 Cal.App.3d 622, 624 [166 Cal.Rptr. 657] (hearing on an order to show cause made returnable before the trial court by the Court of Appeal to inquire as to defendant's competency to enter a guilty plea or to determine whether he was denied effective assistance of counsel was a continuation of the criminal trial); *Conservatorship of Durham* (1988) 205 Cal.App.3d 548, 554 [252 Cal.Rptr. 414] (TRO proceeding in family court was a continuation of a conservatorship proceeding because it involved the same issue and was "an alternative maneuver" to prevent a party from acting as conservator. The parties were the same, and the paramount question to be decided by the court—the conservatee's immediate welfare—was the same.)

The court below relied on *Andrews* v. *Joint Clerks etc. Committee, supra,* 239 Cal.App.2d 285, in ruling that GWF's action was a continuation of the earlier proceedings brought by the environmental groups. *Andrews* involved

the filing of a second action which raised essentially the same claims as a motion filed in the original lawsuit. There, plaintiffs brought an action alleging breach of a collective bargaining agreement and employment discrimination and sought a writ of mandate, declaratory relief and damages (case No. 520151). Defendants filed a motion for summary judgment on the ground plaintiffs had failed to exhaust the grievance procedure provided by the collective bargaining contracts. Judge Karesh heard the motion and ordered further proceedings stayed pending submission of the issues to the grievance arbitration procedure under the collective bargaining contract. The case went to arbitration. When the arbitrator had decided "Issue No. 1" but not "Issue No. 2," plaintiffs moved for an order vacating Judge Karesh's stay order or, in the alternative, for an order naming an impartial and neutral arbitrator. On the same day, plaintiffs commenced the second action (case No. 541755) by filing a "Complaint and Petition for Naming of Impartial and Neutral Arbitrator." The plaintiffs and defendants in both actions were identical. The new action alleged there was a dispute between plaintiffs and defendants arising from case No. 520151, that Judge Karesh had ordered only matters designated in issue No. 1 to arbitration, that issue No. 2 was not involved in that action, and that the arbitrator was not impartial. By way of relief, the complaint requested that the court appoint an impartial and neutral arbitrator to arbitrate issue No. 2, that the court enjoin further arbitration "in this action" by the current arbitrator and that the court supervise the arbitration of issue No. 2. (239 Cal.App.3d at pp. 289-292.)

Plaintiffs obtained an order to show cause returnable at the same time and in the same department of the superior court as designated by them for the hearing of their motion to name an impartial arbitrator in the original case. (239 Cal.App.3d at p. 292.)

Plaintiffs moved to disqualify Judge Karesh in the new action. The court denied the motion finding that the original and new action involved essentially the same parties, the same subject matter and the same case. The appellate court agreed. In the original action, plaintiffs moved to vacate the stay order or, in the alternative, for the naming of a new arbitrator. The new action sought a new arbitrator for issue No. 2. The basic issue in both was removal of the arbitrator. In each, the attack against him was the same and factors relevant to his bias and prejudice in respect to the original action were "necessarily relevant and material" to similar claims presented in the new action. Identical points and authorities were filed in support of the respective motions. The court concluded that the new action was merely a continuation of the original action, and plaintiffs' section 170.6 motion was untimely. (239 Cal.App.3d at pp. 297-298.)

■■■ *Andrews* is distinguishable from this case. The subsequent proceeding in *Andrews* challenged the validity of an order reached by the court

in the first action. GWF's complaint does not affect the validity or enforceability of any order reached by Judge Leetham in the original lawsuit by the environmental groups. In that case, the environmental groups sued the City challenging the council's approval in March 1988 of the GWF cogeneration project. The environmental groups sought an injunction against the project pending suit and the ultimate vacation of the order approving the EIR and site plan. The principal issues involved were the adequacy of the environmental impact report (whether it lacked information or analysis, whether the information it was based on was accurate and adequate, whether the council's determination that the GWF cogeneration plant would have no significant impact on the environment was supported by substantial evidence) and whether the project complied with the City's zoning ordinance. Judge Leetham's ruling determined that the EIR was accurate and adequate, that the City Council had substantial evidence to support its finding that the cogeneration project would have no significant adverse environmental effects on the environment within the meaning of CEQA, and that the site plan review was in compliance with the City's zoning ordinance.

In contrast, GWF's lawsuit challenges the City Council's enactment of the moratorium ordinance and the actions taken by the City to withhold issuance of building permits to GWF. The suit alleges that the moratorium: violates CEQA mandates; conflicts with and is preempted by federal and state law; deprives GWF of a vested right to construct the project; deprives GWF of due process because it is in effect a reconsideration of the City Council's approval of the project; violates GWF's equal protection rights in that it affects only GWF's coal-burning facility and exempts other similarly situated facilities; constitutes a taking of GWF's property without just compensation because the stated rationale for the ordinance was addressed and rejected by the council in approving the project and by the court in the original lawsuit; and is inconsistent with the general plan and a prejudicial abuse of the council's discretion. In addition, GWF alleged that the City Council was estopped from preventing GWF from constructing the cogeneration plant. GWF's complaint seeks a writ of mandate enjoining enforcement of the ordinance and requiring the City to issue building permits for the project, various forms of declaratory relief and damages.

GWF submits that issues raised by the second action turn on issues litigated in the original action. For example, whether the City has taken a vested property right of GWF involves issues relating to the site plan approval, and GWF's equal protection claim involves issues relating to the effect on the environment of coal combustion versus combustion of other fuels which were addressed under the adequacy of the EIR challenge in the first action.

GWF alleges that the moratorium was designed specifically to stop its cogeneration plant. An argument can be made that the purpose of the

moratorium and the purpose of the original lawsuits are the same—to bar construction of the GWF cogeneration project. There is clearly a subject matter connection between the two cases. However, unlike the *Andrews* case, the legal issues raised by the two actions are quite distinct. In addition, GWF's action seeks different relief, includes new parties and results in a realignment of the original parties.

Moreover, the moratorium bars the issuance of building permits for *any* coal-burning facility. The scope of GWF's action includes more universal issues relating to all coal-burning facilities. The paramount questions presented by the two cases are different, and the relationship of the issues in the two cases is not as direct as in the cases where the second proceeding involves the very validity of the first order or enforcement proceedings based on the original order. GWF's suit is a new action attacking a separate phenomenon and thus is not merely a continuation of the earlier proceeding.

Assigning the same judge to hear a series of complex actions, such as these where there exists subject matter overlap, may promote judicial efficiency. However, judicial efficiency is not to be fostered at the expense of a litigant's rights under section 170.6 to peremptorily challenge a judge. In the same vein, the fact that a party can peremptorily challenge a judge after he has ruled in a case involving related factual or legal issues may result to some extent in forum shopping by parties filing later similar suits. ██ However, collateral estoppel does not apply to disqualification motions. (*Solberg* v. *Superior Court, supra,* 19 Cal.3d 182, 190, fn. 6.)

In *Solberg,* the court held the People were not precluded from disqualifying a judge in a later case where they had failed to move for disqualification in an earlier prosecution involving different defendants but the same legal issues. By negative implication of section 170.6, subdivision (3), which bars a party from making more than one motion in any one action, the statute must be construed to mean that in two successive actions a party may move to disqualify in each, or may disqualify in the later action without waiving that right by failing to so move in the earlier action. (19 Cal.3d 182, 190, fn. 6.)

██ Petitioners' motion to disqualify Judge Leetham in the separate action is governed by the *Solberg* rather than the *Andrews* case. Therefore, the motion was timely because GWF's lawsuit was not merely a continuation of the earlier proceeding.

In view of the fact that all parties have been afforded the opportunity to address the issues presented by the petitions and a full presentation has been made, this is a proper case for the issuance of the relief requested in the first instance. (*Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171.) A

writ of mandate will lie to compel the trial court to vacate its order denying the motion for disqualification.

### Disposition

Let a peremptory writ of mandate issue directing the trial court: (1) to vacate its orders of December 9, 1988, and January 3, 1989, granting GWF leave to file the cross-complaint and to enter instead an order denying leave to file the cross-complaint, and (2) to vacate its order of January 3, 1989, finding the section 170.6 challenge in action No. 47347 untimely and to enter instead an order accepting the disqualification challenge and transferring the matter to another judge for further proceedings including, if necessary, a determination as to the continued viability of the TRO issued on December 16, 1988, in action No. 47347. (3) Any temporary restraining orders based on the cross-complaint or issued after denial of the disqualification motion are vacated. (4) The temporary stay order issued by this court on January 26, 1989, is vacated.

This order is made final forthwith. Petitioners to recover costs.